1  Steven T. Gubner - Bar No. 156593
   Richard D. Burstein - Bar No. 56661
2  Corey R. Weber - Bar No. 205912
   EZRA BRUTZKUS GUBNER LLP
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone: 818.827.9000
   Facsimile: 818.827.9099
5  Email:   sgubner@ebg-law.com
            rburstein@ebg-law.com
6            cweber@ebg-law.com

7  Attorneys for David Seror, Chapter 7 Trustee

8          **UNITED STATES BANKRUPTCY COURT**

9   **CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION**

10

| | |
|---|---|
| In re | Case No. 1:08-bk-14339-MT |
| AUTOMATED FINANCE CORPORATION fka AUTOMATED FINANCIAL, LLC, dba Out of BK.com; dba 520debt.com; dba Calabasas Financial Center Mortgages; dba FHA1FHA.com, | Chapter 7 |
| | **NOTICE OF MOTION AND MOTION OF CHAPTER 7 TRUSTEE FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE AND NURIT PETRI; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID SEROR IN SUPPORT THEREOF** |
| Debtor. | **Date:** September 16, 2009 <br> **Time:** 10:00 a.m. <br> **Place:** Courtroom 302 <br> United States Bankruptcy Court <br> 21041 Burbank Boulevard <br> Woodland Hills, CA 91367 |

**TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY**

**JUDGE, AND TO ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that on September 16, 2009 at 10:00 a.m., or as soon

thereafter as may be heard in Courtroom 302 at the United States Bankruptcy Court for the

Central District of California, San Fernando Valley Division, 21041 Burbank Boulevard,

Woodland Hills, California 91367, David Seror, the Chapter 7 trustee (the "Trustee") of the

bankruptcy estate of Automated Finance Corporation fka Automated Financial, LLC, dba Out of

-1-

1  BK.com; dba 520debt.com; dba Calabasas Financial Center Mortgages; dba FHA1FHA.com (the

2  "Debtor"), will and does hereby move ("Motion") the Court for entry of an order approving the

3  settlement agreement between the Trustee and Nurit Petri ("Petri", the "Petri Agreement"),

4  pursuant to Federal Rule of Bankruptcy Procedure 9019. A true and correct copy of the Petri

5  Agreement is attached as Exhibit 1 to the Declaration of David Seror (the "Seror Declaration")

6  filed and served herewith.

7  **The Petri Agreement**

8  The Petri Agreement concerns the resolution of numerous claims asserted by the Trustee

9  against Petri arising out of operations of the Debtor pre-petition and the alleged acts and

10  omissions of Petri and her deceased husband Mitchell Stewart ("Stewart") and entities related to

11  the Debtor, Petri and Stewart. These claims center around the Trustee's allegations of transfers

12  and comingling between the Debtor, Petri and: (1) First City Funding; (2) Finance Network,

13  LLC; (3) Wave Sound, Inc.; (4) OTC, LLC; (5) Collateralized Warehousing Fund, LLC fka

14  CSAP Secured Investors, LLC; (6) Network Development, LLC; and (7) Inn Malibu Corporation

15  dba Malibu Inn Corporation (collectively, the "Debtor Entities") that make substantive

16  consolidation of Petri and the Debtor Entities with the Debtor's estate appropriate. The claims

17  also include preference and fraudulent transfer claims. Petri denies liability as to each of the

18  aforementioned claims and allegations and asserts numerous defenses. Some of the pertinent

19  terms of the Petri Agreement are as follows:

20  1. **Payment to the Estate.** Petri will pay $110,000 to the Trustee as well as other sums

21  which may arise from the sale and transfer of certain trade names and liquor licenses

22  of the Debtor Entities prior to the hearing on the Motion.

23  2. **Consolidation of Related Entities.** Petri shall not oppose entry of default judgment

24  against the Debtor Entities, which would result in consolidating the Debtor Entities as

25  debtors in this bankruptcy case. Real, personal and intangible property of the Debtor

26  Entities and Petri (with the exception of defined exempt property) shall become

27  property of the Estate, as more fully described in the Settlement Agreement.

28

-2-

3. **Petri Becomes a Consolidated Debtor.** In addition, Petri shall become an involuntary consolidated chapter 7 debtor with the Debtor's case as described in the Petri Agreement. Petri is granted specified exemptions and rights in property which shall remain outside the consolidated case.

4. **Releases.** The Trustee and Petri enter into mutual and general releases as specified in the Petri Agreement.

The Petri Agreement is entered into in good faith and negotiated at arms length. The Petri Agreement is fair and reasonable as it will provide the Estate with significant recovery (through payment and consolidation), will minimize administrative expense and litigation with high costs and uncertain results.

In the Motion, the Trustee requests that the Court enter an order:

1. Granting the Motion;

2. Approving the Petri Agreement;

3. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Petri Agreement; and

4. Granting such other and further relief as this Court may deem just and proper.

The Motion is based upon the Notice of Motion and Motion, the Memorandum of Points and Authorities, and the Seror Declaration, as well as such other and further grounds as may be properly presented to the Court. The Motion has been served upon the Debtor, the United States Trustee, the parties to the Agreement, all persons requesting special notice in the Case. They and the creditors and potential creditors of the Debtor and the Debtor Entities specified in the Debtor's books and records for which the Trustee has valid addresses will be served with the separate Notice of Motion. Concurrently with the filing of this Motion, the Trustee will by ex parte application request an Order of the Court also permitting publication of the separate notice of this Motion in a newspaper of general circulation to provide additional notice.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any party opposing the relief sought by the motions must file a written opposition setting

1   forth the facts and law upon which the opposition is based and must appear at the hearing on the

2   motion. Any such response to the motions must be filed with the Clerk of the Court and served

3   upon counsel for the Trustee named in the upper left-hand corner of this notice not less than

4   fourteen (14) calendar days prior to the hearing on the motion. Pursuant to Local Bankruptcy

5   Rule 9013-1(h), any response not timely filed and served may be deemed by the Court to be

6   consent to granting of the motion.

7

8   Dated: _August 3_____, 2009                     EZRA BRUTZKUS GUBNER LLP

9

10                                By: _____

11                                   Richard D. Burstein
                                  Attorneys for Chapter 7 Trustee, David Seror

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITES

**I.      INTRODUCTION**

This Motion seeks Court approval of the Petri Agreement attached to the accompanying Seror Declaration. The Petri Agreement provides $110,000 cash, and potentially, further amounts from the sale of liquor licenses and trade names of related businesses prior to the hearing on this Motion. In addition, the Petri Agreement provides that Petri will not oppose the concurrently-filed motion for default judgment as to the Trustee's claim for substantive consolidation against the Debtor Entities. The Estate stands to obtain real, personal and intangible property of the Debtor Entities, together with avoidance actions as to transfers from the Debtor Entities. The Petri Agreement will obtain the aforementioned assets without the need for further litigation which would likely be expensive and uncertain. The Petri Agreement is the result of independent analysis by the Trustee and arms' length negotiations by the parties. In the Trustee's business judgment, the Petri Agreement represents a fair and equitable resolution of the disputes involved in the Petri Agreement and is in the best interests of creditors.

Among the assets of the Estate are numerous claims asserted by the Trustee against Petri arising out of operations of the Debtor pre-petition and the alleged acts and omissions of Petri and her deceased husband Mitchell Stewart ("Stewart") and entities related to the Debtor, Petri and Stewart, including the Debtor Entities. The claims involve interrelated conduct that make substantive consolidation of Petri and the alleged Debtor Entities with the Debtor's estate appropriate. The claims also include preference and fraudulent transfer claims. The Trustee believes that these assets may be valuable, but acknowledges that any recovery outside of consensual resolution may require expending significant resources and attorneys fees, which would have to be paid out of the Estate.

The parties to the Petri Agreement have decided to resolve all disputes between them and enter into the Petri Agreement. Some of the pertinent terms of the Petri Agreement are as follows:

1. **Payment to the Estate.** Petri will pay $110,000 to the Trustee as well as other sums which may arise from the sale and transfer of certain trade names and liquor licenses of the Debtor Entities prior to the hearing on the Motion.

2. **Consolidation of Related Entities.** Petri shall not oppose entry of default judgment against the Debtor Entities, which would result in consolidating the Debtor Entities as debtors in this bankruptcy case. Real, personal and intangible property of the Debtor Entities and Petri (with the exception of defined exempt property) shall become property of the Estate, as more fully described in the Settlement Agreement.

3. **Petri Becomes a Consolidated Debtor.** In addition, Petri shall become an involuntary consolidated chapter 7 debtor with the Debtor's case as described in the Petri Agreement. Petri is granted specified exemptions and rights in property which shall remain outside the consolidated case.

4. **Releases.** The Trustee and Petri enter into mutual and general releases as specified in the Petri Agreement.

The complete terms are set forth in the actual Petri Agreement, which is appended to the accompanying Seror Declaration.

Based on the grounds stated herein and in the Seror Declaration, the Trustee respectfully requests that the Court grant the Motion.

## II.    STATEMENT OF FACTS RELATED TO THE PETRI AGREEMENT AND PROCEDURAL HISTORY

On June 26, 2008 (the "Petition Date") an involuntary Chapter 7 petition was filed for the Debtor in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Court"), commencing bankruptcy case number 1:08-bk-14339 MT. Thereafter, the Trustee was appointed and remains the duly appointed and acting Chapter 7 trustee of the estate.

The Trustee's allegations as to the facts related to the Debtor and the Debtor Entities are set forth at length in the Trustee's motion for substantive consolidation. An overview of the

1    allegations is as follows: On or about June 14, 2005, Automated Financial, LLC was formed as a

2    California limited liability company.  The members of Automated Financial, LLC were Petri and

3    the JTT Trust. The JTT Trust is a trust executed on September 1, 1998. Stewart and Petri are

4    listed as the Trustees of the JTT Trust. On or about January 10, 2006, the company converted

5    from a limited liability company to a corporation and changed its name to Automated Financial

6    Corporation, the Debtor Petri was listed as the CEO and sole director of the Debtor; the secretary

7    was listed as Amy Entin, and the Chief Financial Officer was listed as Ann Tramble

8    ("Tramble").  Tramble became the President of the Debtor in December 2007.

9         The Debtor was formed as a means of continuing the business of another entity formed

10   and controlled by Petri and Stewart, First City Funding, after First City Funding became saddled

11   with debt approximating $10 million by entering into a settlement with Terwin Advisors, LLC

12   ("Terwin").  That settlement was necessitated by First City Funding's sale of mortgages to

13   Terwin using falsified information regarding those mortgages.  After the Debtor was

14   incorporated, Petri and Stewart crafted an acquisition agreement whereby the Debtor would

15   purchase the client lists and all other soft assets of First City Funding in exchange for $6.5

16   million.  Tramble testified that the intent of the acquisition agreement, and the determination as

17   to the amount of consideration for the acquisition agreement, was to use the amounts paid by the

18   Debtor to First City Funding to help satisfy First City Funding's debt to Terwin.  First City

19   Funding ultimately used the funds from the Debtor not only to pay off debt to Terwin, but also to

20   fund the other Debtor Entities and to fund Petri's and Stewart's lavish lifestyle.  Among other

21   things, First City Funding paid for eight high value automobiles for Petri and Stewart, including

22   Bentleys, a Ferrari and a Rolls Royce.

23        The Debtor's funds, including funds obtained from loans, lines of credit and investors,

24   also were used to provide significant cash flow to another entity formed and controlled by Petri

25   and Stewart, Finance Network.  Finance Network purchased and owned properties such as the

26   Vault 350 and Backstage Jazz night clubs in Long Beach.  The Debtor transferred a net amount

27   of over $4 million to Finance Network during 2007 and 2008.  In addition, the Debtor transferred

28

1   a net amount of over $4 million to another Petri and Stewart entity, Wave Sound, during 2007

2   and 2008. Wave Sound was used by Petri and Stewart as a personal checking account to pay for

3   their personal expenses, such as their children's activities, pet grooming and veterinary services,

4   homeowners' dues and utilities. Wave Sound also was the recipient of the high value vehicles

5   from First City Funding, including the Bentleys, Ferrari and Rolls Royce, which Petri and

6   Stewart continued to have the use and control of after the transfer from First City Funding to

7   Wave Sound. Not only did Wave Sound pay for Petri's and Stewart's personal expenses and

8   high value vehicles, Wave Sound also was a settlor of the trust that Petri and Stewart set up for

9   themselves and their children, the JTT Trust aka the JTT Family Trust (the "JTT Trust").

10        Petri and Stewart also induced investors to invest millions of dollars during 2007 and

11   2008 in another entity formed and controlled by Petri and Stewart, Collateralized Warehousing

12   Fund. The idea behind Collateralized Warehousing Fund was that the amounts invested would

13   be used to provide funding to the Debtor and the investments would be collateralized by

14   properties owned by Petri's and Stewart's other entities, such as Finance Network and Wave

15   Sound. However, the investments in Collateralized Warehousing Fund were deposited directly

16   and indirectly into Finance Network rather than into Collateralized Warehousing Fund or the

17   Debtor. Finance Network then transferred the investments into other Debtor Entities to meet

18   cash flow needs.

19        Petri's and Stewart's first-tier entities -- the Debtor, First City Funding, Finance Network

20   and Wave Sound -- were used to cross-fund each other to meet cash flow needs, and further to

21   fund second-tier entities such as Network Development, the entity that ran the operations of

22   Petri's and Stewart's food and entertainment businesses such as the Malibu Inn, Vault 350, and

23   Backstage Jazz night clubs. The first-tier entities also generated funds used to provide assets for

24   the JTT Trust. Spreadsheets showing the transfers, dates, check numbers and amounts for the

25   Debtor and Debtor Entities during 2007-2008 are attached to the motion for substantive

26   consolidation as Exhibits A-F. Petri denies the foregoing allegations and facts related to the

27   Debtor and Debtor Entities.

28

1   **III.   DISCUSSION**

2      **A.   The General Terms of the Petri Agreement.**

3      As an overview of the terms of the Petri Agreement, the Trustee provides the following

4   synopysis:[1]

5         **1.   Cash Consideration.**

6      The Petri Agreement provides for the lump sum payment of One hundred Ten Thousand

7   Dollars ($110,000) in cash to the Estate.[2]  In addition, the Estate stands to obtain 50% of the net

8   proceeds of liquor licenses and/or trade names from some of the Debtor Entities that transpire

9   prior to the hearing on the Motion.[3]

10         **2.   Other Consideration.**

11      The Debtor Entities will be consolidated with the Estate, subject to the Court's concurrent

12   approval of the Default Judgment Motion, and which Petri shall not oppose.[4]  The consolidation

13   will be effective as described in the Petri Agreement.[5]  The Estate's assets will then include the

14   real, personal and intangible property of the Debtor Entities, and all statutory avoidance powers

15   in relation to those entities.[6]  At this point it is not clear as to whether or not the real property has

16   equity.  However, the avoidance powers provide the Trustee with additional means of recovery

17   for the Estate in potentially significant amounts.

18         **3.   Petri as Chapter 7 Debtor.**

19      As part of the Petri Agreement, Petri will become an involuntary consolidated debtor.[7]

20   Petri will receive exemptions for proceeds obtained from two life insurance policies for Stewart,

21   jewelry, clothing and household furnishings, three vehicles (two of which are in the names of her

22   children), social security funds and property held by related trusts.[8]  If Petri were to file a chapter

23

24   [1] The terms of the Petri Agreement are stated in the Petri Agreement.  The synopsis provided
     herein is an overview only.  The terms in the Petri Agreement itself remain controlling.
25   [2] Petri Agreement, ¶ 4(a).
     [3] Petri Agreement, ¶ 4(b)
26   [4] Petri Agreement, ¶ 5.
     [5] Petri Agreement, ¶ 5.
27   [6] Petri Agreement, ¶ 5(e) through (j).
     [7] Petri Agreement, ¶ 6.
28   [8] Petri Agreement, ¶ 7.

1  7 bankruptcy case in the ordinary course, it is likely that some or all of the foregoing property

2  would not be entitled to exemptions. The allowance of the exemptions is part of the compromise

3  that results in the cash payment to the Trustee together with the consolidation of the Debtor

4  Entities. Through the Petri Agreement, the Trustee waives claims to the exempt property and

5  waives the right to seek the recovery of transfers of the exempt property to third persons,

6  including but not limited to Petri's children.[9]

7  **4.    Release of Claims.**

8  The Trustee releases his claims against Petri.[10] The release expressly excludes attorneys

9  and/or accountants for Petri, including but not limited to David Keller, Keller & Associates and

10  Larry Bakman (however, certain attorneys and accountants are released: Danning Gill Diamond

11  & Kollitz LLP, Ken Berke, Janet Levine, Don Etra, Amy Jabobs and Glassman, Browning &

12  Saltsman).[11] In addition, the release excludes Ruth Anderson (Petri's sister and an employee of

13  the Debtor) and Amy Entin.[12]

14  **5.    Protections for Secured Creditors.**

15  The interests of secured creditors of the Debtor Entities are protected from dilution of

16  their security interests after consolidation. The secured claims and interests will remain attached

17  to the specific property to which they are currently attached, without dilution through

18  consolidation.[13] The Trustee does reserve the right to object to purportedly secured claims and

19  interests.[14]

20  **B.    The Potential Impact of Consolidation on Creditors of the Debtor and Debtor Entities.**

21

22  As discussed above, the interests of secured creditors of the Debtor Entities

23  should be protected upon consolidation. The unsecured creditors of the Debtor and the Debtor

24  Entities may benefit from consolidation. As to unsecured creditors of the Debtor, they may

25  _____

[9] Petri Agreement, ¶ 7.

26  [10] Petri Agreement, ¶ 13.

[11] Petri Agreement, ¶ 13.

27  [12] Petri Agreement, ¶ 13.

[13] Petri Agreement, ¶ 5(k).

28  [14] Petri Agreement, ¶ 5(k).

1    benefit from the real, personal and intangible property of the Debtor Entities that will become

2    part of the bankruptcy estate. In addition, the unsecured creditors of the Debtor may benefit

3    from the avoidance actions in regard to transfers from the Debtor Entities. As to unsecured

4    creditors of the related parties, they will now have a forum in which to file a proof of claim. At

5    the present, the Debtor Entities have been in a hibernation state where creditors are pursuing

6    undefended lawsuits and judgments are being obtained, but where there is no readily available

7    means to collect on suits. In addition, since suits are not being defended, even unmeritorious

8    suits against the Debtor Entities are likely to be reduced to default judgment, diluting the claims

9    of legitimate judgment creditors. The creditors of the Debtor Entities may also benefit from the

10    avoidance of prolonged litigation by the Trustee against the Debtor Entities to avoid and recover

11    preferential and fraudulent transfers. Through consolidation, the transfers between the Debtor

12    and Debtor Entities should effectively be unwound.

13    **C.**    **The Court Should Approve the Agreement Based on the A&C Factors.**

14    Federal Rule of Bankruptcy Procedure 9019 provides in part that the Court may approve

15    a compromise upon motion by the trustee and after an opportunity for a hearing on notice to all

16    creditors and all interested parties.

17    A compromise must be "fair and equitable." *In re A&C Properties*, 784 F.2d 1377,

18    1380-81 (9th Cir. 1986), *cert den. Martin v. Robinson*, 479 U.S. 854, 1-7 S.Ct. 189 (1989). "In

19    determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the

20    court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to

21    be encountered in the matter of collection; (c) the complexity of the litigation involved, and the

22    expense, inconvenience and necessarily attending it; (d) the paramount interest of the creditors

23    and a proper deference to their reasonable views in the premises." *In re A&C Properties*, 784

24    F.2d 1377, 1381 (9th Cir. 1986), *cert den. Martin v. Robinson*, 479 U.S. 854, 1-7 S.Ct. 189

25    (1989); *In re America West Airlines, Inc.*, 214 B.R. 382 (Bankr. D. Ariz. 1997). "The

26    bankruptcy court has great latitude in approving compromise agreements. [Citations.] However,

27    the court's discretion is not unlimited. The court may approve a compromise only if it is "fair

28

1    and equitable." *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988). "In approving a compromise,

2    a court is to determine what is in the best interests of the estate and whether it is fair and

3    equitable for the creditors. [Citation.] Whether a compromise will benefit or harm the debtor is

4    immaterial." *In re Schmitt*, 215 B.R. 417, 424 (9th Cir. BAP 1997).

5        Although the court is to consider the range of results in litigation, "the court's assessment

6    does not require resolution of the issues, but only their identification, so that the reasonableness

7    of the settlement may be evaluated." *In re Hermitage Inn, Inc.*, 66 Bankr. 71, 72 (Bankr. D.

8    Colo. 1986). The settlement must not fall below the lowest point in the range of reasonableness.

9    *In re W.T. Grant Co.*, 699 F.2d 599, 613 (2nd Cir. 1983).

10        The factors set forth in *In re A&C Properties* support approval of the Petri Agreement.

11        **1.    The Probability of Success of Litigation on the Merits**

12        As with all litigation, the probability of success in any potential litigation against Petri is

13    subject to dispute and issues and claims are likely to be contested heavily. This Court is well

14    aware of the intense litigation surrounding prior efforts by the Trustee to obtain substantive

15    consolidation. In order to recover against Petri, the Trustee would need to establish, among other

16    things, the details of numerous, intricate relationships, transfers and transactions by and among

17    Petri, Stewart, the Debtor, the Debtor Entities and third parties. Proving these allegations may be

18    difficult, involving numerous and voluminous records, and likely with no percipient witness

19    testimony. Petri has previously indicated an intent to vigorously contest the admissibility and/or

20    authenticity of documents obtained by the Trustee from the FBI and other sources, which the

21    Trustee would rely upon in the litigation against Petri. The litigation has no guarantee of

22    success, and certainly may require substantial expenditures. The Trustee cannot, at this point,

23    estimate with any degree of certainty the probability of obtaining a judgment against Petri, or the

24    amount of any judgment against Petri due to various factors, including but not limited to issues

25    in regard to admissibility, and the difficulty in obtaining information in regard to transfers from

26    Petri to others.

27    */ / /*

28

### 2.    The Difficulties of Collection

If the litigation against Petri were to proceed, there may be significant difficulties in collecting on any judgment. First, it is entirely possible that any transfers received by Petri from the Debtor or Debtor Entities have been subsequently transferred to her children, or to others. The transfers are somewhat difficult to track at this point due to the liquidation of most bank accounts and Petri's assertion of her Fifth Amendment right not to testify. Second, even if the Trustee were successful in obtaining judgments, it is not clear that any significant amount of money remains with Petri or her children. There are a large number of pending cases against Petri and the various entities, some of which have been reduced to judgment. In addition, the FBI is engaged in a criminal investigation of Petri. Petri has likely spent significant sums for legal representation in this bankruptcy case and in relation to the criminal investigation. It is also possible that some of the funds have been transferred off-shore. With various judgment creditors and pending suits against Petri and Petri having likely spent significant sums on attorney's fees, any judgment obtained against Petri may be uncollectable, or significantly diminished.

### 3.    Expense, Inconvenience or Delay Occasioned by the Litigation

This is a bankruptcy case where the Debtor has not filed statements, schedules or a creditor's matrix and where Petri, asserted to be the principal of the Debtor and the Debtor Entities, has exercised her Fifth Amendment right not to testify based on a pending criminal investigation by the Federal Bureau of Investigation ("FBI"). The other asserted principal of the Debtor, Stewart, died prior to the commencement of the bankruptcy case. Amy Entin, believed to be the person with the most knowledge in regard to the accounting practices of the Debtor and Debtor Entities, has also exercised her Fifth Amendment right not to testify.

Based on the lack of testimony, the Trustee was forced to engage in a time consuming effort to analyze and reconstruct the accounting and finances of the Debtor and the Debtor Entities through bank records, Quick Books records and other records provided by the FBI. The analysis and reconstruction of records led to the Trustee filing motions for temporary restraining orders, preliminary injunction and for substantive consolidation. The Trustee's motion for

1  substantive consolidation has not yet been heard by the Court due to pending settlement

2  discussions between the Trustee and Petri. Petri's opposition to the Trustee's motion for

3  substantive consolidation was heavily litigated and costly for the Estate.

4         Should the Petri Settlement not be approved by the Court, the Trustee expects that

5  litigation regard the motion for substantive consolidation and the Adversary Case to be heavily

6  litigated, expensive and time consuming for the Estate.

7              **4.      The Interests of Creditors**

8         The bankruptcy case is currently administratively insolvent. The Petri Agreement may

9  provide the means to provide for a distribution to unsecured creditors. The cash component of

10 the Petri Agreement is $110,000, plus potentially additional amounts through the sale of liquor

11 licenses and trade names prior to the hearing on the Motion. In addition, Petri agrees not to

12 oppose the Trustee's concurrently-filed motion for default judgment against the Debtor Entities.

13 In addition to the personal and real property of the Debtor Entities, the Trustee will also be able

14 to pursue avoidance actions as to transfers from the Debtor Entities. If the Motion is not

15 approved, the Trustee will litigate the Estate's claims against Petri and the Debtor Entities,

16 which, as discussed above, may be costly, and as with all litigation, has uncertain results. Also

17 as discussed above, the Petri Agreement is in the best interests of secured creditors, and of the

18 unsecured creditors of the Debtor and the Debtor Entities.

19    **D.    The Petri Agreement Is Fair and Reasonable and in the Best Interests of the**

20         **Estate.**

21        The Petri Agreement is a solution that affords a recovery to the Estate, minimizes further

22 administrative expense and reduces hardship to the Debtor. Utilizing applicable standards, the

23 proposed settlement is in the best interests of the Estate. Accordingly, the Trustee requests that

24 this Court enter an order pursuant to Bankruptcy Rule 9019 authorizing the Trustee to enter into

25 the Petri Agreement and approving the terms of the compromise as agreed upon by all parties.

26 Concurrently herewith, the Trustee brings on for hearing his motion for default judgment re

27 consolidation of the Debtor Entities as provided for in the Petri Agreement.

28

-14-

1

## IV.    CONCLUSION

2    The Trustee respectfully requests that the Court enter an order:

3    1.  Granting the Motion;

4    2.  Approving the Petri Agreement;

5    3.  Authorizing the Trustee to execute any documents or take any actions reasonably

6        necessary to effectuate the terms of the Petri Agreement; and

7    4.  Granting other and further relief as this Court may deem just and proper.

8

9    Dated: August 3 , 2009                              EZRA BRUTZKUS GUBNER LLP

10

11                                                       By: _____

12                                                           Richard D. Burstein
                                                           Attorneys for Chapter 7 Trustee, David Seror

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF DAVID SEROR

I, David Seror, declare:

1.      I am the chapter 7 trustee ("Trustee") of the bankruptcy estate (the "Estate") of Automated Finance Corporation (the "Debtor") in the above captioned case.  I know each of the following facts to be true of my own personal knowledge and, if called as a witness, I could and would competently testify with respect thereto.  I am submitting this declaration in support of the Motion of Chapter 7 Trustee for Order Approving Settlement Agreement Between the Trustee and Nurit Petri (the "Motion").  All terms as defined in the Motion and in the settlement agreement with Petri  (the "Petri Agreement") are incorporated by this reference.  A complete and accurate copy of the fully executed Petri Agreement is attached hereto as **Exhibit 1**.

2.      The Petri Agreement concerns disputes arising out of the alleged conduct of Petri, Stewart, the Debtor, and alleged Debtor Entities.  I approve the Petri Agreement and have signed it.  The foregoing motion accurately reflects the analysis leading to my decision to do so.

3.      The Petri Agreement will provide a return to the estate.  At the present time, I can make no prediction on the disposition of claims in this case.

4.      In regard to the real property that would become property of the Estate if the Motion and the Default Judgment Motion are granted, at this point it is not clear as to whether or not the property has equity.  However, the avoidance powers in regard to the Related Entities provide the Trustee with additional means of recovery for the Estate in potentially significant amounts.

5.      If Petri were to file a chapter 7 bankruptcy case in the ordinary course, it is possible that some or all of the property listed in the Petri Agreement as exempt would not be entitled to exemptions.  The allowance of the exemptions is part of the compromise that results in the cash payment to the Trustee together with Petri's agreement not to oppose the consolidation of the Debtor Entities.

6.      As with all litigation, the probability of success in any potential litigation against Petri is subject to dispute and issues and claims are likely to be contested heavily.  This Court is

1  well aware of the intense litigation surrounding prior efforts by the Trustee to obtain substantive

2  consolidation. In order to recover against Petri, the Trustee would need to establish, among other

3  things, the details of numerous, intricate relationships, transfers and transactions by and among

4  Petri, Stewart, the Debtor, the Debtor Entities and third parties. Proving these allegations may be

5  difficult, involving numerous and voluminous records, and likely with no percipient witness

6  testimony. Petri has previously indicated an intent to vigorously contest the admissibility and/or

7  authenticity of documents obtained by the Trustee from the FBI and other sources, which the

8  Trustee would rely upon in the litigation against Petri. The litigation has no guarantee of

9  success, and certainly may require substantial expenditures. I cannot, at this point, estimate with

10  any degree of certainty the probability of obtaining a judgment against Petri, or the amount of

11  any judgment against Petri due to various factors, including but not limited to issues in regard to

12  admissibility, and the difficulty in obtaining information in regard to transfers from Petri to

13  others.

14       7.    If the litigation against Petri were to proceed, there may be significant difficulties

15  in collecting on any judgment. First, it is entirely possible that any transfers received by Petri

16  from the Debtor or Debtor Entities have been subsequently transferred to her children, or to

17  others. Some of the subsequent transferees may be arms' length. The transfers are somewhat

18  difficult to track at this point due to the liquidation of most bank accounts and Petri's assertion of

19  her Fifth Amendment right not to testify. Second, even if I were successful in obtaining

20  judgments, it is not clear that any significant amount of money remains with Petri or her

21  children. There are a large number of pending cases against Petri and the various entities, some

22  of which have been reduced to judgment. In addition, I am informed and believe that the FBI is

23  engaged in a criminal investigation of Petri. Petri may have spent significant sums for legal

24  representation in this bankruptcy case and in relation to the criminal investigation. It is also

25  possible that some of the funds have been transferred off-shore. With various judgment creditors

26  and pending suits against Petri and Petri having spent sums on attorney's fees, any judgment

27  obtained against Petri may be uncollectable, or significantly diminished.

28

-17-

8.    This is a bankruptcy case where the Debtor has not filed statements, schedules or a creditor's matrix and where Petri, asserted to be the principal of the Debtor and the Debtor Entities, has exercised her Fifth Amendment right not to testify based on a pending criminal investigation by the FBI. I am informed and believe, based on my receipt of a death certificate, that the other asserted principal of the Debtor, Stewart, died prior to the commencement of the bankruptcy case. Amy Entin, who I am informed and believe is the person with the most knowledge in regard to the accounting practices of the Debtor and Debtor Entities, has also exercised her Fifth Amendment right not to testify.

9.    Based on the lack of testimony, my attorneys were forced to engage in a time consuming effort to analyze and reconstruct the accounting and finances of the Debtor and the Debtor Entities through bank records, Quick Books records and other records provided by the FBI. The analysis and reconstruction of records led to me filing motions for temporary restraining orders, preliminary injunction and for substantive consolidation. The motion for substantive consolidation has not yet been heard by the Court due to pending settlement discussions between me and Petri. Petri's opposition to the motion for substantive consolidation was heavily litigated and costly for the Estate.

10.    Should the Petri Settlement not be approved by the Court, I expect that litigation regarding the motion for substantive consolidation and the Adversary Case to be heavily contested, expensive and time consuming for the Estate.

11.    At present, the bankruptcy case is administratively insolvent. The Petri Agreement may provide the means to provide for a distribution to unsecured creditors. The cash component of the Petri Agreement is $110,000, plus potentially additional amounts through the sale of liquor licenses and trade names prior to the hearing on the Motion. In addition, Petri agrees not to oppose the concurrently-filed motion for default judgment against the Debtor Entities. In addition to the personal and real property of the Debtor Entities, I will also be able to pursue avoidance actions as to transfers from the Debtor Entities. If the Motion is not approved,

-18-

1  I will litigate the Estate's claims against Petri and the Debtor Entities, which, as discussed above,

2  may be costly, and as with all litigation, has uncertain results.

3      12.    As discussed above, and in my business judgment, the Petri Agreement is fair and

4  reasonable in the best interests of the Debtor and the Debtor Entities. The Petri Agreement is a

5  solution that affords a recovery to the Estate, minimizes further administrative expense and

6  reduces hardship to the Debtor.

7      I declare under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.

9  Executed this 3 0ᵗʰ day of July, 2009, at Beverly Hills , California.

10

11

12                                    David Seror

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter the "Agreement") is entered into by and between David Seror, solely in his capacity as Chapter 7 Trustee (the "Trustee") for the estate of Automated Finance Corporation fka Automated Financial, LLC dba Out of BK.com dba 520debt.com dba Calabasas Financial Center Mortgages dba FHA1FHA.com (the "Debtor"), in the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), bearing Case No. 1:08-bk-14339-MT, on the one hand, and Nurit Petri ("Petri"), on the other hand. The Trustee and Petri are collectively referred to herein as the "Parties."

## RECITALS

A. On June 26, 2008, an involuntary petition was filed against the Debtor, and on July 29, 2008, the Bankruptcy Court entered an order for relief. David Seror was subsequently appointed as the Chapter 7 Trustee in the case.

B. On or about September 2, 2008, the Trustee filed a complaint against Petri, the JTT Trust, First City Funding, Finance Network, Wave Sound, OTC, Collateralized Warehousing Fund, Network Development, the Debtor, Malibu Sands Real Estate, Inc., PDQ Lending, Inc., Calabasas Road, LLC, Centurion Credit Counseling Corporation, Malimusic Productions, Inc., Coach House Concerts Santa Barbara, Inc., Inn Malibu, Pacific Design Quality Remodel, Inc., HMLI, LLC, Coastal Development, Inc., Calabasas

Financial Center Mortgages, the Estate of Mitchell Stewart fka
McKinley Nash Jr. ("Stewart"), Amy Entin, and Richard Marder,
which was assigned Adv. No. 1:08-ap-01500 (the "Adversary
Proceeding").

C.   The Trustee filed his First Amended Complaint in the
Adversary Proceeding, on or about September 26, 2008, naming
Larry Bakman as an additional party, among other things.

D.   The First Amended Complaint in the Adversary Proceeding
seeks substantive consolidation, avoidance and recovery of
fraudulent transfers, turnover of property, declaratory relief
and a preliminary and permanent injunction.

E.   In the Adversary Proceeding, the Trustee filed a
separate motion seeking the issuance of a temporary restraining
order and preliminary injunction.  The Bankruptcy Court issued a
temporary restraining order on December 1, 2008 and thereafter
issued a preliminary injunction by order entered on December 12,
2008, regarding the transfer of properties by Finance Network,
Wave Sound, OTC, and Network Development pursuant to the terms
set forth in those orders.

F.   The Trustee has also filed a Motion for an Order
Substantively Consolidating Petri, First City Funding, Finance
Network, Wave Sound, OTC, Collateralized Warehousing Fund, and
Network Development with the Estate of the Debtor Nunc Pro Tunc
as of the Date of the Involuntary Bankruptcy Petition Filed on
June 26, 2008 (the "Consolidation Motion").  After a preliminary
status conference, the Bankruptcy Court set a hearing date of
December 23, 2008, for the evidentiary objections filed in

318343.2   24508                    2

opposition to the Consolidation Motion and a hearing date of
January 14, 2009, for the evidentiary hearing on the
Consolidation Motion. Based on the Parties' representations to
the Bankruptcy Court that they had achieved a settlement in
principle subject to appropriate documentation and Bankruptcy
Court approval, the aforementioned dates have been vacated to
permit the settlement process to proceed.

G.    Several of the defendants named in the First Amended
Complaint in the Adversary Proceeding have defaulted, and
defaults have been entered against First City Funding, Wave
Sound, Finance Network, Network Development, OTC, Collateralized
Warehousing Fund and Inn Malibu (collectively, with Petri,
hereinafter referred to as the "Consolidated Parties"), among
others.

H.    The Trustee asserts that in addition to the claims
pending in the Adversary Proceeding, that significant additional
claims exist against First City Funding, Wave Sound, Finance
Network, Network Development, OTC, Collateralized Warehousing
Fund, Inn Malibu, the JTT Trust, Petri and the estate of Stewart
for preferences and fraudulent transfers pursuant to 11 U.S.C §§
547, 548, 550 and California Civil Code §3439, *et seq*.

I.    Petri was married to Stewart until his death which
occurred on April 27, 2008.  No probate has been opened.

J.    Petri and Stewart were the settlors and trustees of the
Amended and Restated JTT Trust (the "JTT Trust").  Upon Stewart's
death, and pursuant to the terms of the JTT Trust, the following

three surviving trusts arose:   (1) the JTT Bypass Trust; (2) the
JTT Marital Trust; and (3) the JTT Survivor's Trust.

    K.   As of June 26, 2008, Petri was the record title owner
of the real property identified as follows, which are more
particularly described in Exhibits "1" through "8" attached
hereto (the "Petri Properties"):

        (1)   5622 Hazeltine Ave., Valley Glen CA 91401

        (2)   225 Rosecrans Ave., Manhattan Beach CA 90266

        (3)   3705 Lamborghini Ln, Modesto CA

        (4)   739 W. Franklin St., Monterey CA 93940

        (5)   1575 Locust Dr., Tracy CA 95376

        (6)   1905 Baker Pl., San Jose CA 95131

        (7)   3221 Hazelwood St., Vallejo CA 94591

        (8)   5616 Hazeltine Ave., Valley Glen CA 91401

    L. As of June 26, 2008, the JTT Trust was the record title
owner of the real property identified as follows, which are more
particularly described in Exhibits "9" through "19" attached
hereto (the "JTT Trust Properties"):

        (1)   24965 Lorenzo Ct., Calabasas CA 91302

        (2)   31636 Sea Level Dr., Malibu CA 90265

        (3)   1905 Baker Pl, San Jose CA

        (4)   26968 Flo Ln #314, Canyon Country CA

        (5)   754 Agostini Cir, Folsom CA

        (6)   4329 Bolivar Rd., Woodland Hills, CA

        (7)   2138 N. Cahuenga Bl, Hollywood CA

        (8)   1873 Badger Pass, Antioch CA

(9)   1575 Locust Dr., Tracy CA

(10)  5316 Sugar Creek, Salida CA

(11)  734 12th St., Santa Monica CA

M.   The following real property was titled in the names of one or more of the Consolidated Parties as of June 26, 2008, which properties are more particularly described in Exhibits "20" through "39" attached hereto (the "Other Properties"):

(1)   11708 Roswell, Chino, CA 91710

(2)   20526 Amie Ave., Torrance, CA 90502

(3)   3502 Morning Star Ln., Norco CA 92860

(4)   17130 Palomas, Perris CA 92570

(5)   938 Fredensborg Canyon, Solvang

(6)   21431 Chagall Rd, Topanga 90290

(7)   11479 Tiara St., North Hollywood

(8)   4865 Bakman Ave., North Hollywood CA 90601

(9)   18032 Flynn Dr. #5404, Canyon COUntry

(10)  14151 Burbank Blvd, Valley Glen CA 91401

(11)  22969 & 22965 Pacific Coast Hwy, Malibu 90265

(12)  350 Pine Ave., Long Beach 90802

(13)  330-340 Pine Ave, Long Beach CA 90802

(14)  24100 Calabasas Rd., Calabasas 91302

(15)  3840 Old Topanga Canyon Rd., Calabasas 91302

(16)  10549 Nevada, Chatsworth  91311

(17)  1610 Arboles, Glendale CA 91207

(18)  415 East D St., Ontario 91764

(19)  117 Drake Ct., Vallejo 94591

(20)  2106 N. Mountain View Ave., San Bernardino, CA

N.   The Parties believe it is in their mutual interests and the best interests of the Debtor and its creditors to resolve their disputes and end the costs associated with litigating the Motion, the First Amended Complaint as between them and claims for preferences and fraudulent transfers discussed in Paragraph I herein.

<u>AGREEMENT</u>

NOW, THEREFORE, for good and valuable consideration, including the covenants contained herein, it is agreed as follows:

1.   <u>Incorporation</u>:  The Recitals set forth hereinabove are incorporated herein by reference.

2.   <u>Bankruptcy Court Approval</u>:  The terms of this Agreement, and the effectiveness thereof, are contingent upon approval by the Bankruptcy Court.

3.   <u>Effective Date</u>: Upon his receipt of the fully executed Agreement, the Trustee will promptly seek the Bankruptcy Court's approval of the Agreement.  The Agreement shall become effective on the eleventh (11th) day after the entry of an order by the Bankruptcy Court approving this Agreement (the "Effective Date").

4.   <u>Payment by Petri</u>:

a.   Within five business days after the Effective Date, Petri shall pay the total sum of One Hundred Ten Thousand Dollars ($110,000) (the "Settlement Sum") to the Trustee.  The Settlement

Sum shall be payable by cashier's check or wire transfer payable
to David Seror, Chapter 7 Trustee. The Parties acknowledge that
some portion of this payment shall be paid from the proceeds
realized by Petri on the sale of property located at 25400 Prado
de la Felicidad, Calabasas California after a hearing post-
petition and that said property is not otherwise reflected in
this Agreement.

     b.   Petri, any of the Consolidated Parties or any other
entity of which Petri is or has been a principal, may sell any or
all trade names or liquor licenses.  The net proceeds will be
paid by escrow to the client trust account of Danning, Gill,
Diamond & Kollitz, LLP.  Net proceeds are gross proceeds less any
tax or other liens on the licenses, and customary expenses
related to the transfers, but not including the legal fees
incurred on behalf of any transferor or transferee.  The Trustee
shall be kept reasonably informed as to the progress of sale of
the licenses and/or trade names, including the terms hereof, and
shall be entitled to receive any and all escrow estimated closing
statements, if any, and copies of the closing statements.  From
the net proceeds, 50% may be paid to or on behalf of Petri.  The
balance of 50% shall be paid to the Trustee upon the earlier of
the entry of an  order not subject to appeal approving this
Agreement by the Bankruptcy Court or the determination in the
Trustee's favor of the pending substantive consolidation motion
or adversary proceeding or as soon thereafter as practical in
light of the actual progress of such sales.  In the event that an

318343.2   24508                    7

order approving this Agreement not subject to appeal is not
entered upon a motion by the Trustee duly brought to approve the
Agreement, or orders or judgments are not entered in favor of the
Trustee on his substantive consolidation motion or adversary
proceeding in the event the approval of Agreement is denied in
whole or in part and thereafter the Trustee proceeds with his
substantive consolidation motion or adversary proceeding, upon
seven days notice the balance of funds may be distributed to
Petri or on her behalf.  Any funds paid to Petri or on her behalf
pursuant to this paragraph shall not be property of the estate or
the object of recovery by a trustee or any other party in any
subsequent legal proceeding of any kind.  The Trustee expressly
waives his rights, if any, to seek recovery of the proceeds paid
to Petri or on her behalf pursuant to this paragraph or any
subsequent transferees.  This paragraph survives this Agreement
and the parties are entitled to rely upon e-mail confirmation of
agreement to the terms of this paragraph as an estoppel.

    5.   <u>Consolidation of the Consolidated Parties and their
Property with the Debtor's Estate and Protection of Secured
Claims and Interests</u>:

    a.   Petri shall be deemed to be an involuntary consolidated
chapter 7 debtor as of the Effective Date.

    b.   The Trustee shall notice a default prove-up hearing to
take place concurrently with the hearing on the motion to approve
this Agreement in regard to defaults entered in the Adversary
Proceeding against First City Funding, Collateralized Warehousing

Fund, Wave Sound, OTC, Network Development, Finance Network and
Inn Malibu, seeking substantive consolidation of those entities
pursuant to the terms of this Agreement. The form of the default
judgment proposed by the Trustee is attached hereto as Exhibit
"40".

     c.    Petri does not and shall not oppose or object to the
entry of default judgment against First City Funding,
Collateralized Warehousing Fund, Wave Sound, OTC, Network
Development, Finance Network and Inn Malibu. The entry of
default judgment against the foregoing entities is a condition
precedent to the effectiveness of this Agreement. In the event
that the Bankruptcy Court denies the motion for entry of default
judgment as to the foregoing entities, this Agreement shall be of
no further force or effect.

     d.    Following the entry of default judgment, and as of the
Effective Date, First City Funding, Collateralized Warehousing
Fund, Wave Sound, OTC, Network Development, Finance Network and
Inn Malibu, those entities shall be deemed to be involuntary
consolidated chapter 7 debtors.

     e.    The Trustee shall retain all of a trustee's avoidance
power rights pursuant to both federal bankruptcy and California
law effective as of June 26, 2008, including but not limited to
the right to seek to avoid and recover preferential or fraudulent
transfers by the Consolidated Parties prior to June 26, 2008
pursuant to 11 U.S.C. §§ 547, 548 and 550 and California Civil
Code § 3439, *et seq.*, except as otherwise set forth in this

Agreement.

f.   The Trustee shall not pursue avoidance or recovery of transfers made by or to Petri following June 26, 2008.

g.   The commencement date of the Consolidated Parties' involuntary case, the petition date, shall be June 26, 2008, and the date of the order for relief shall be the Effective Date.

h.   All applicable dates and deadlines that apply to an involuntary debtor, creditors, interested parties and a chapter 7 trustee shall be applicable and based upon a June 26, 2008, filing date, except that the claims bar date for the Consolidated Parties shall be on or after the 90th day after the Effective Date.   The Trustee shall provide at least sixty days notice of the bar date to the creditors of the Consolidated Parties.

i.   Subject to the approval of the Office of the United States Trustee, David Seror shall be the Chapter 7 Trustee of the Consolidated Parties' involuntary consolidated case.

j.   All personal, intangible and real property of First City Funding, Collateralized Warehousing Fund, Wave Sound, OTC, Network Development, Finance Network and Inn Malibu shall hereinafter be referred to as the "Entities' Property."   Some portion of the Entities' Property has been hereinabove described in Recital M.   The personal property specifically includes, but is not limited to, any and all liquor licenses and other licenses held in the name of any of the Consolidated Parties.   On the Effective Date, the Entities' Property shall become property of the Debtor and the Consolidated Parties' consolidated estate.

318343.2   24508                        10

k.   Any and all secured claims and interests that exist
with respect to the Entities' Property shall remain attached to
the specific property to which the secured claims and interests
attached, without dilution through the consolidation of other
secured claims and interests.   The Trustee reserves the right to
object to such secured claims and interests.

l.   Petri shall cooperate with the Trustee in providing
the best information available to her of the names, addresses and
amounts of the creditors of the Debtor and the Consolidated
Parties.   Petri shall cooperate with the Trustee in reviewing the
service list for the motion to approve this Agreement and Petri
shall promptly inform the Trustee that to the best of her
knowledge, all creditors and other interested parties have been
included in the service list, and if she is aware of other
creditors, potential creditors or other interested parties, she
shall promptly provide that information to the Trustee.
Provision of such information to the Trustee is not intended to
be and shall not be a waiver of any of the Consolidated Parties'
rights, including but not limited to Petri's Fifth Amendment
rights, and any privileges.

6.   Property of Petri, the JTT Trust and the JTT Survivor
Trust and Protection of Secured Claims and Interests:

a.   Except as specifically identified in paragraph 8 below,
any and all personal, intangible and real property owned by
Petri, the JTT Trust and the JTT Survivor Trust as of the
Effective Date, which is not subject to exemption in accordance

with paragraph 7 hereof or with the Bankruptcy Code and

California Code of Civil Procedure ("C.C.P."), and proceeds

therefrom (collectively, the "Consolidated Petri Property"),

shall be property of the Estate and shall be substantively

consolidated with the Estate on the Effective Date. Some portion

of the Consolidated Petri Property has been hereinabove described

in Recitals K and/or L.

b.   Any and all secured claims and interests that exist

with respect to the Consolidated Petri Property shall remain

attached to the specific property to which the secured claims and

interests are attached as of the date hereof, without dilution

through the consolidation of other secured claims and interests.

 The Trustee reserves the right to object to such secured claims

and interests.

c.   In the event that any item of personal, intangible or

real property shall become property of the Consolidated Estate on

the Effective Date and such has not been dealt with by paragraphs

5j and k and 6 a and b above, then any and all secured claims and

interests that exist with respect to such property shall remain

attached to the specific property to which the secured claims and

interests are attached as of the date hereof, without dilution

through the consolidation of other secured claims and interests.

The Trustee reserves the right to object to such secured claims

and interests.

d.   On the Effective Date, the Consolidated Petri Property

shall be deemed to be property of the Estate, *nunc pro tunc* to

June 26, 2008, unless said Consolidated Petri Property was transferred by Petri between June 26, 2008 and the Effective Date (the "Transferred Petri Property") and to which such Transferred Petri Property the Trustee expressly waives any and all claims.

e.  The transfer of title to the Petri Property, the JTT Property, the Other Property, and any other real property from the Consolidated Parties (collectively, the "Real Property") to the Trustee shall be effectuated by the recordation of an order approving this Agreement.

f.  On the Effective Date, the Trustee shall become responsible for maintaining insurance on the Real Property.

g.  At least 21 calendar days prior to the Effective Date, Petri shall provide the insurance policies and contact information for the relevant insurance agents to the Trustee to the extent available to her.  Petri shall cooperate with the Trustee to transfer insurance policies or for the Trustee to establish new insurance policies and shall promptly provide all requested relevant information to the Trustee to the extent available to her.

h.  Petri shall fully cooperate with the Trustee's efforts to market and sell the Real Property.

7.  <u>Petri's Exemptions, Use of Bank Accounts and Discharge:</u>

a.  Petri shall be deemed to have claimed and be entitled to exemptions in the following property:

(1)  All life insurance proceeds paid from the following two policies:

318343.2   24508                         13

(a)   Pacific Life Insurance Company, Policy
Number VP609725590; and

(b)    American General Life Insurance
Company, Policy Number N000094L.

(the "Life Insurance Proceeds")in connection with Stewart's death
paid to Petri and Stewart's son, Nathan Nash ("Nathan"),or paid
to Petri and transferred to third parties, including but not
limited to Petri's children (Ariella Nurit Nash, Analise Sarah
Nash, Devin Petri and Nathan), Danning, Gill, Diamond & Kollitz,
LLP, Larry Bakman, Ken Berke, Janet Levine, Don Etra, Amy Jacobs,
or Glassman, Browning & Saltsman, or any law firms affiliated
with said lawyers or subsequent transfers made by them from the
funds received from Petri.

(2)   All jewelry owned by Petri, whether held by
Petri individually, the JTT Trust, the JTT Bypass Trust, the
JTT Marital Trust or the JTT Survivor Trust;

(3)   All clothing, household furnishings and other
personal property owned by Petri, the JTT Trust, the JTT
Bypass Trust, the JTT Marital Trust or the JTT Survivor
Trust;

(4)   Petri's 2004 Mercedes 430s vehicle;

(5)   the 2000 Yukon Denali vehicle in the
possession of Petri's son, Devin Petri;

(6)   the 2004 BMW SUV in the possession of Nathan;

(7) All social security funds previously paid or
to be paid in the future to Petri or Petri's children,

Ariella Nurit Nash and Analise Sarah Nash ("Petri's

Children") occasioned by the death of Stewart or which are

otherwise exempt under applicable law.

(8) The property held by the JTT Marital Trust or

the JTT ByPass Trust, and any jewelry held by the JTT

Survivor Trust.

(9)  All property claimed as exempt pursuant to

this Paragraph 7(a) shall hereinafter be referred to as the

"Exempt Property").

b.    The Trustee, any successor trustee, or any other party

in interest may not raise an objection to or seek disallowance of

such claimed exemptions in the Exempt Property.

c.    The Trustee waives any and all claims to seek

disallowance of the exemptions in the Exempt Property or claims

to recover transfers of any Exempt Property.

d.    The Trustee waives any and all claims to seek recovery

of transfers of any of the Life Insurance Proceeds.

e.    The order approving this Agreement shall be controlling

regarding the exemptions in the Exempt Property and shall be

binding on the Trustee or any successor trustee, as well as all

creditors and interested parties of the Debtor and the

Consolidated Parties.

f.    Petri shall be permitted to retain her checking and

savings accounts at Bank of America and Union Bank, account nos.

#06988-61520 and #1200048950, respectively, including the use of

any credit cards associated therewith, which accounts contain

proceeds from life insurance benefits claimed as exempt pursuant to the terms of this Agreement, and such accounts will not be closed by the Trustee.

g.   The Trustee, and any successor trustee, will not seek to revoke Petri's discharge nor object to Petri's discharge and shall not join with any creditor who may seek to deny or revoke Petri's discharge.  This Agreement shall not be construed as barring creditors or other interested parties from objecting to Petri's discharge, or from filing complaints to determine the non-dischargeability of debt.

8.   Trust Assets

a.   Except as identified in this Agreement, Petri shall waive claims to all assets in the JTT Trust and the JTT Survivor's Trust.

b.   Petri shall retain the jewelry that passed into the JTT Survivor's Trust, the JTT ByPass Trust or the JTT Marital Trust, which jewelry has been identified as Exempt Property in paragraph 7 hereof.

c.   Petri shall retain any and all interest in her clothing, household furnishings and other personal property, whether held in her name individually or in the name of the JTT Trust, the JTT Survivor's Trust, the JTT ByPass Trust or the JTT Marital Trust, which personal property has been identified as Exempt Property in paragraph 7 hereof.

10.   341(a) Examinations:

a.   The 341(a) examinations of the Debtor shall be

deemed to be the 341(a) examinations of all of the Consolidated Parties.

b.     A 341(a) examination of the Debtor and the Consolidated Parties shall occur on July 14, 2009 in conjunction with the continued 341(a) examination of the Debtor (the "Examination").  Petri shall appear at the 341(a) examination as the person most knowledgeable for the Debtor and the Consolidated Parties.  To the extent the Effective Date is after July 14, 2009, or Petri fails to appear at the Examination, the Examination shall be continued to a date subsequent to the Effective Date ("Continuance Date").  The Examination shall be concluded on July 14, 2009 or the Continuance Date.

c.  The Trustee and any interested party shall have the right to question Petri at the Examination; however, Petri reserves all rights to refuse to testify and to assert her rights under the Fifth Amendment.

11.   The Adversary Proceeding:  Following entry of the Bankruptcy Court order approving this Agreement and payment of the Settlement Sum in full: (a) the parties to this Agreement shall stipulate to dismissal with prejudice of the Trustee's First Amended Complaint against Petri, with each party to bear his or her own fees and costs; and (b) the Trustee shall dismiss without prejudice his claims against Malibu Sands Real Estate, Inc., PDQ Lending, Inc., Calabasas Road, LLC, Centurion Credit Counseling Corporation, Malimusic Productions, Inc., Coach House Concerts Santa Barbara, Inc., Pacific Design Quality Remodel,

Inc., HMLI, LLC, Coastal Development, Inc. and the Estate of
Mitchell Stewart by notice pursuant to Federal Rule of Civil
Procedure 41(a)(1).  As to the remainder of the claims in Adv.
No. 1:08-1500-MT, the claims against First City Funding, Wave
Sound, Finance Network, Network Development, OTC, Collateralized
Warehousing Fund and Inn Malibu, shall be resolved by entry of
default judgment.  Nothing herein provided shall effect a
resolution of the Trustee's claims against Larry Bakman or Amy
Entin as set forth in the First Amended Complaint, or any other
claims that the Trustee has or may have against Bakman or Entin.
The First Amended Complaint and the Adversary Proceeding shall
proceed as to the Trustee's claims against Bakman (except as
provided in paragraph 7(a)(1) hereinabove) and Entin pled therein
or as may be added by amendment hereafter.

    12.  <u>Stewart Probate</u>:  To the extent it becomes necessary
for a probate estate for Stewart to be opened, the Trustee shall
not assert any claims against the probate estate which will
either directly or indirectly constitute a claim against Petri,
nor shall the Trustee bring any claims directly against Petri.

    13.  <u>Release of Claims</u>:

    The Trustee, on behalf of himself, on behalf of the Debtor's
Estate, his employees, representatives, attorneys, accountants,
agents, predecessors, successors and assignees, hereby fully
releases and irrevocably and forever waives, releases, and
discharges Petri and her employees, representatives, attorneys,
accountants, agents, predecessors, successors and assignees from,

and against any and all claims, demands, debts, liabilities,
obligations, expenses, damages, actions, causes of action, rights
of indemnity, liens, penalties, costs, expenses, attorneys' fees,
and remedies, of every kind, whether known or unknown, suspected
or unsuspected, including without limitation, those arising from
or related to the Adversary Proceeding or the Consolidation
Motion, other than performance of this Agreement.  Except as
otherwise reflected in this Agreement, this release expressly
excludes any and all claims that the Trustee has or may have
against: (1) attorneys and/or accountants for Petri, including
but not limited to David Keller, Keller & Associates and Larry
Bakman; (2) Ruth Anderson; and (3) Amy Entin.  Notwithstanding
the foregoing, this release expressly includes Danning, Gill,
Diamond & Kollitz, LLP, Ken Berke, Janet Levine, Don Etra, Amy
Jacobs, Glassman, Browning & Saltsman, and any law firms or
lawyers affiliated with said entities.

Petri, on behalf of herself, her employees, representatives,
attorneys, accountants, agents, predecessors, successors and
assignees, hereby fully releases and irrevocably and forever
waives, releases, and discharges the Trustee, the Debtor's Estate
and their employees, representatives, attorneys, accountants,
agents, predecessors, successors and assignees from, and against
any and all claims, demands, debts, liabilities, obligations,
expenses, damages, actions, causes of action, rights of
indemnity, liens, penalties, costs, expenses, attorneys' fees,
and remedies, of every kind, whether known or unknown, suspected

or unsuspected, including, without limitation, those arising from
or related to the Adversary Proceeding or the Consolidation
Motion, other than performance of this Agreement.  Petri further
hereby waives any claims that she would otherwise possess based
on her equity interest in the Debtor or the Consolidated Parties,
or as provided for in Section 502(h) of the Bankruptcy Code, and
Petri hereby waives any other claims that she has or may have
against the Trustee, the Debtor's Estate or the estate of the
Debtor and the Consolidated Parties.

The parties expressly waive California Civil Code § 1542,
which provides:

> A general release does not extend to claims
> which the creditor does not know or suspect
> to exist in his or her favor at the time of
> executing the release, which if known by him
> must have materially affected his or her
> settlement with the debtor.

14.  No Waiver of Petri Rights:  This Agreement is not
intended to be and is not a waiver of Petri's rights, including
but not limited to Fifth Amendment rights and any privileges, or
an admission by Petri of any liability or an admission of any
contention or allegation contained in the Consolidation Motion or
any of the declarations filed in support of the Consolidation
Motion.  The Agreement cannot be used as evidence adverse to the
interests of Petri or for any other purpose adverse to the
interests of Petri in any bankruptcy case, contested matter,

318343.2  24508                          20

proceeding, legal action, claim, cause of action, arbitration, mediation, administrative proceeding, or lawsuit, other than as evidence in support of, or against, a motion to enforce this Agreement.  Additionally, to the extent that Petri provides or has provided documents or information to the Trustee,  the providing of such documents or information is not intended to be and is not a waiver of any of Petri's rights, including but not limited to Fifth Amendment rights and any privileges, an admission by Petri of any liability or an admission of any contention or allegation contained in the Consolidation Motion or any of the declarations or other evidence filed in support of the Consolidation Motion.  In the event that a court subsequently concludes otherwise not at the request of the Trustee, such shall not affect the validity of this Agreement.

15.   <u>Final Resolution of The Consolidation Motion</u>:

a.   The Order approving this Agreement shall: (i) operate as an adjudication on the merits of the Consolidation Motion as to the Consolidated Parties and as a bar to any subsequent lawsuit by the Trustee for substantive consolidation as to the Consolidated Parties and (ii) be final and binding, and the Parties shall and hereby do knowingly, voluntarily, intentionally and expressly waive and relinquish any and all rights of appeal or for relief from judgment that they otherwise may have possessed with respect to the Consolidation Motion and all facts, allegations, and/or circumstances pertaining thereto and the subject matter thereof.

b.    Except as otherwise set forth herein, the Parties agree
to take any and all actions necessary to toll all time periods
during which the Parties are required to file pleadings, conduct
discovery, file a joint pre-trial order with respect to the
Consolidation Motion, and attend the pre-trial conference pending
the entry of a final non-appealable Order approving this
Agreement.  To the extent necessary, Petri by and through her
counsel shall be responsible for preparing any necessary
stipulations seeking continuances of discovery cut-off dates, the
date for hearing on the evidentiary objections filed in
opposition to the Consolidation Motion, and the date for the
evidentiary hearing on the Consolidation Motion.

16.  Access to Documents:

a.    Petri shall cooperate to the extent reasonably possible
in effectuating compliance with any subpoena issued by the
Trustee and served on third parties in regard to obtaining checks
or other documents that relate or may relate to the consolidated
Estate's claims or potential claims against third parties,
including but not limited to preference and fraudulent transfer
claims pursuant to 11 U.S.C. §§ 547, 548 and 550 and California
Civil Code § 3439, *et seq*.  Petri shall also cooperate with the
Trustee in obtaining from accountants for the Consolidated
Parties, including but not limited to NSBN, LLP, documents
referring or related to the Consolidated Parties, including but
not limited to tax returns, documents provided by the
Consolidated Parties, journal entries and correspondence. Nothing

318343.2   24508                    22

contained herein shall obligate Petri to assist the Trustee in seeking to obtain from accountants for the Consolidated Parties any documents which, notwithstanding the approval of this compromise by the Court and consequential consolidation of debtors, nonetheless remain privileged or otherwise protected. Petri shall also cooperate in assisting the Trustee to obtain books and records (both electronic and hard copies) of Network Development, the Malibu Inn and Inn Malibu to the extent that she has access to said books and records.

b.    Upon written request from any of the Consolidated Parties, the Trustee shall provide the Consolidated Parties access to or provide copies of any and all non-privileged documents in the Trustee's possession relating to the Consolidated Parties.  Petri shall be responsible for all photocopying and delivery expenses.

c.    Upon written request from any of the Consolidated Parties, the Trustee shall provide the Consolidated Parties access to the hard drives, servers and other electronic data obtained from the Federal Bureau of Investigation relating to the Consolidated Parties.  This data shall be copied at Petri's expense and provided to Petri at Petri's expense.

17.    Notices:  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or sent by fax, or, if mailed, on the date which is three business days after mailing by United States certified mail, postage prepaid, return

receipt requested, to the parties at the following addresses (until such addresses are changed by notice pursuant to these notice provisions):

    <u>If to Petri</u>:

    Kathy Bazoian Phelps, Esq.
    Danning, Gill, Diamond & Kollitz, LLP
    2029 Century Park East, Third Floor
    Los Angeles, CA  90067

    <u>If to the Trustee</u>:

    David Seror
    Ervin Cohen & Jessup LLP
    9401 Wilshire Boulevard
    Ninth Floor
    Beverly Hills, CA 90212-2974

    and

    Steven T. Gubner, Esq.
    Richard D. Burstein, Esq.
    Corey R. Weber, Esq.
    Ezra Brutzkus Gubner, LLP
    21650 Oxnard Street, Suite 500
    Woodland Hills, CA 91367

   18. <u>Complete Agreement</u>:  This is an integrated Agreement. This Agreement, the exhibits hereto and the documents to be entered into in connection herewith are the final written expression and the complete and exclusive statement of all of the agreements, conditions, promises and covenants between and among the Parties with respect to the subject matter hereof, and supersede all prior or contemporaneous agreements, negotiations, representations, understandings and discussions between the Parties and/or their respective counsel with respect to the subject matter hereof.  Any amendment to this Agreement must be made in writing, must specifically refer to this Agreement, must

318343.2  24508                    24

be signed by all of the Parties sought to be bound thereby and is subject to Bankruptcy Court approval.

19.  <u>Attorneys' Fees and Costs</u>:  The Parties shall each bear their own respective attorneys' fees, expenses and costs incurred in connection with the subject matter hereof, including, without limitation the Consolidation Motion, the Adversary Proceeding and the preparation, implementation and performance of this Agreement.

20.  <u>Further Assurances</u>:  Each of the Parties shall execute such other and further documents and do such further acts as may reasonably be required to effectuate the intent of the Parties to carry out the terms of this Agreement.

21.  <u>Petri's Cooperation</u>:  To the extent that Petri's cooperation is required by the terms of this Agreement, the Trustee shall communicate with Petri through her counsel of record, Kathy Bazoian Phelps and George Schulman of Danning, Gill, Diamond & Kollitz, LLP to obtain such cooperation.

22.  <u>Successors and Assigns</u>:  This Agreement shall inure to benefit of and be binding upon the successors and assigns of the Parties and each of them.

23.  <u>Severability</u>:  If any provision of this Agreement or portion thereof should be declared invalid for any reason, the entire Agreement shall be deemed invalid.

24.  <u>Headings</u>:  Paragraph headings and captions have been inserted as a matter of convenience and do not define, alter, vary or serve to interpret any provision of this Agreement.

318343.2   24508                    25

25.  <u>Governing Law</u>:  This Agreement and all transactions consummated pursuant to the terms hereof shall be governed exclusively by and construed in accordance with the internal, substantive laws of the State of California, or otherwise applicable federal or bankruptcy law.  The Bankruptcy Court shall retain exclusive jurisdiction to enforce, interpret or resolve any and all disputes concerning this Agreement.

26.  <u>Counterparts and Facsimile Signatures</u>:  This Agreement may be executed in any number of counterparts each of which shall constitute one and the same instrument.  A facsimile signature shall, for the purposes of this Agreement, be deemed to constitute an original signature and be binding as such.

27.  <u>Exhibits</u>:  All exhibits are incorporated herein by reference.

28.  <u>No Admissibility if Agreement Not Approved</u>:  If this Agreement is not approved by the Bankruptcy Court, the Agreement and its contents shall be inadmissible for any and all purposes, including, without limitation, the Consolidation Motion and the Adversary Proceeding.

29.  <u>No Admission of Liability</u>: Nothing contained herein shall be deemed an admission of liability or wrongdoing, and this Agreement is made solely to resolve disputes and to avoid the occurrence of unnecessary fees and expenses.

30.  <u>Venue</u>:  In the event of any litigation over this Agreement, the parties agree that such action may only be filed in the United States Bankruptcy Court for the Central District of

California.  The Bankruptcy Court shall retain jurisdiction to
resolve any such dispute.

DATED:   June 2, 2009                 _____
                                      David Seror, Chapter 7 Trustee
                                      of Automated Finance
                                      Corporation


DATED:   June ___, 2009               _____
                                            Nurit Petri



APPROVED AS TO FORM:

DATED:  June ___, 2009     DANNING, GILL, DIAMOND & KOLLITZ, LLP


                           By:  _____
                                Kathy Bazoian Phelps
                                Attorneys for Nurit Petri


DATED:  June ___, 2009     EZRA BRUTZKUS GUBNER LLP


                           By:  _____
                                Steven T. Gubner
                                Richard D. Burstein
                                Corey R. Weber
                                Attorneys for David Seror,
                                Chapter 7 Trustee of Automated
                                Finance Corporation


318343.2  24508                27

California.  The Bankruptcy Court shall retain jurisdiction to resolve any such dispute.

DATED:     June ___, 2009          _____
                                   David Seror, Chapter 7 Trustee
                                   of Automated Finance
                                   Corporation

DATED:     June 11, 2009           _____
                                   Nurit Petri


APPROVED AS TO FORM:

DATED:  June ___, 2009     DANNING, GILL, DIAMOND & KOLLITZ, LLP

                           By:  _____
                                Kathy Bazoian Phelps
                                Attorneys for Nurit Petri

DATED:  June ___, 2009     EZRA BRUTZKUS GUBNER LLP


                           By:  _____
                                Steven T. Gubner
                                Richard D. Burstein
                                Corey R. Weber
                                Attorneys for David Seror,
                                Chapter 7 Trustee of Automated
                                Finance Corporation

California.  The Bankruptcy Court shall retain jurisdiction to resolve any such dispute.


DATED:      June __, 2009        _____
                                 David Seror, Chapter 7 Trustee
                                 of Automated Finance
                                 Corporation


DATED:      June __, 2009        _____
                                 Nurit Petri



APPROVED AS TO FORM:

DATED:   June __, 2009    DANNING, GILL, DIAMOND & KOLLITZ, LLP


                          By:  _____
                               Kathy Bazoian Phelps
                               Attorneys for Nurit Petri

DATED:   ~~June~~ *August 3*, 2009   EZRA BRUTZKUS GUBNER LLP


                          By:  _____
                               Steven T. Gubner
                               Richard D. Burstein
                               Corey R. Weber
                               Attorneys for David Seror,
                               Chapter 7 Trustee of Automated
                               Finance Corporation


318343.2  24508                  27

48

# EXHIBIT "1"

File No: 02210754

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

The South 50 feet of the Northerly 100 feet of the Westerly 140.14 of Lot 66, of Tract No. 1000, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 19 Pages 1 to 34 inclusive of Maps, in the Office of the County Recorder of said County.

**Assessor's Parcel No.: 2246-032-016**

5622 Hazeltine Avenue. (Van Nuys area) City of Los Angeles, CA

# EXHIBIT "2"

File No: 02219748

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 32 in Block 1 of Tract No. 3701, in the City of Manhattan Beach, in the County of Los Angeles, State of California, as per Map recorded in Book 41, Page(s) 36 of Maps, in the office of the County Recorder of said county.

Assessor's Parcel Number: **4137-021-066**

225 Rosecrans Avenue, City of Manhattan Beach, California

# EXHIBIT "3"

# EXHIBIT "A"

All that certain real property situated in the County of Stanislaus, State of California, described as follows:

LOT 12, IN BLOCK 12457, OF GRAND PRIX ESTATES, IN THE CITY OF MODESTO, COUNTY OF STANISLAUS, STATE OF CALIFORNIA, AS PER MAP FILED APRIL 05, 1977 IN VOLUME 26 OF MAPS, AT PAGE 68, STANISLAUS COUNTY RECORDS.

Assessor's Parcel Number: **052-054-086-000**

3705 Lamborghini Lane, City of Modesto, California

# EXHIBIT "4"

File No: 02219565

# EXHIBIT "A"

All that certain real property situated in the County of Monterey, State of California, described as follows:

Lot 31 and the Easterly 10 feet of Lot 30, as shown on "Map showing the Martin Subdivision in Blocks 67 and 68 in the City of Monterey, California ", in the City of Monterey, County of Monterey, State of California, etc., filed June 22, 1908, in the Office of the County Recorder of the County of Monterey, State of California, and now on file in said Office in Map Book Two, cities and towns, at Page 7 therein and comprising a frontage of 50 feet on Franklin Street and with a uniform depth of 120 feet.

Assessor's Parcel Number: **001-392-025-000**

739 Franklin Street, City of Monterey, California

# EXHIBIT "5"

# EXHIBIT "A"

All that certain real property situated in the County of San Joaquin, State of California, described as follows:

LOT 54 AS SHOWN UPON MAP ENTITLED TRACT NO. 2254 PEACH TREE II, IN THE CITY OF TRACY, COUNTY OF SAN JOAQUIN, STATE OF CALIFORNIA, FILED FOR RECORD JANUARY 20, 1989 IN BOOK OF MAPS AND PLATS, BOOK 29, PAGE 59, SAN JOAQUIN COUNTY RECORDS 234-100-66 1575 LOCUST DRIVE, TRACY, CA 95376

Assessor's Parcel Number:  **234-100-66**

1575 Locust, City of Tracy, California

# EXHIBIT "6"

File No: 02219564

# EXHIBIT "A"

All that certain real property situated in the County of Santa Clara, State of California, described as follows:

LOT 12, TRACT NO. 6790 HIDDEN GLEN NORTH VALLEY UNIT NO. 11, IN THE CITY OF SAN JOSE, COUNTY OF SANTA CLARA, STATE OF CALIRONIA, MAP FILED ON MARCH 12, 1980, MAP BOOK 460, PAGE(S) 20 AND 21, SANTA CLARA COUNTY RECORDS.

1905 Baker Place, City of San Jose, California

# EXHIBIT "7"

File No: 02219561

# EXHIBIT "A"

All that certain real property situated in the County of Solano, State of California, described as follows:

LOT 98, IN THE CITY OF VALLEJO, COUNTY OF SOLANO, STATE OF CALIFORNIA, AS SHOWN ON THAT CERTAIN MAP ENTITLED "VALLEJO MANOR, UNIT NO. 10" WHICH MAP WAS FILED IN THE OFFICE OF THE SOLANO COUNTY RECORDER ON APRIL 30, 1951, IN BOOK 12 OF MAPS AT PAGE 6.

Assessor's Parcel Number: **0071-310-120**

3221 Hazelwood Avenue, City of Vallejo, California

# EXHIBIT "8"

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Parcel A of Parcel Map L.A. No. 2655, in the City of Los Angeles, County of Los Angeles, State of California, (being a division of a portion of Lot 66 of Tract No. 1000, Sheet 2, as per Map recorded in Book 19 Page 2 of Maps) as shown on a Parcel Map filed in Book 51 Page 79 of Parcel Maps, in the Office of the County Recorder of said County.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, but with no right of surface entry, as provided in deeds of record.

Assessor's Parcel Number: **2246-032-018**

5616 Hazeltine Avenue, Los Angeles, California

# EXHIBIT "9"

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

LOT 154 OF TRACT 44473, IN THE CITY OF CALABASAS, COUNTY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 1166, PAGES 48 THROUGH 76, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS, AND OTHER HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEEDS OF RECORD.

PARCEL 3:

A NON-EXCLUSIVE EASEMENT FOR ONLY INGRESS, EGRESS, ACCESS, DRIVEWAY, LANDSCAPING, IRRIGATION, DRAINAGE, WROUGHT IRON FENCING AND WALLS LYING WITHIN THE FOLLOWING DESCRIBED BOUNDARIES OF THAT PORTION OF SAID LOT 205 OF SAID TRACT 44473, LEGALLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHWESTERLY CORNER OF LOT 154 OF SAID TRACT NO. 44473, SAID POINT LYING THE WESTERLY CUL-DE-SAC, RIGHTS-OF-WAY OF LORENZO COURT,

THENCE, NORTH 88 DEGREES 29' 00" WEST 15.48 FEET, ALONG THE SOUTHWESTERLY LOT LINE OF SAID LOT 154;

THENCE, NORTH 25 DEGREES 38' 42" WEST, 179.26 FEET, ALONG THE WESTERLY LOT LINE OF SAID LOT 154;

THENCE, SOUTH 58 DEGREES 21' 55" WEST, 2.99 FEET;

THENCE, SOUTH 25 DEGREES 56' 07" EAST, 171.08 FEET, TO THE BEGINNING OF A NON-TANGENT CURVE CONCAVE NORTHEASTERLY, HAVING A RADIAL OF SOUTH 64 DEGREES 39' 40.55" WEST;

THENCE, SOUTHEASTERLY ALONG LAST SAID CURVE, HAVING A RADIAL OF SOUTH 64 DEGREES 39' 40.55" WEST, A DISTANCE OF 29.24 FEET, A RADIUS OF 32.82 FEET, THROUGH A CENTRAL ANGLE OF 51 DEGREES 03' 03" TO A POINT IN THE WESTERLY CUL-DE-SAC, RIGHTS-OF-WAY OF

24465 Lorenzo Court, City of Calabasas, California

LORENZO COURT, SAID POINT HAVING A RADIAL BEARING SOUTH 76 DEGREES 44' 30.32" WEST;

THENCE, ALONG THE WESTERLY CUL-DE-SAC, RIGHTS-OF-WAY LINE, NORTHWESTERLY A DISTANCE OF 11.35 FEET, A RADIUS OF 44.00 FEET,

THROUGH A CENTRAL ANGLE OF 14 DEGREES 46' 30", TO THE POINT OF BEGINNING,

File No: 02219681

PARCEL 3A:

A NON-EXCLUSIVE EASEMENT FOR ONLY INGRESS, EGRESS, ACCESS, LANDSCAPING, IRRIGATION, DRAINAGE, WROUGHT IRON FENCING AND WALLS OVER THAT PORTION OF SAID LOT 205 OF SAID TRACT 44473 LEGALLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF LOT 154 OF SAID TRACT 44473, SAID POINT LYING IN THE WESTERLY RIGHTS-OF-WAY OF LORENZO COURT, A CUL-DE-SAC;  THENCE,

NORTH 88 DEGREES 29' 00" WEST, 14.01 FEET; THENCE

SOUTH 35 DEGREES 53' 42" EAST, 2.09 FEET; THENCE,

SOUTH 40 DEGREES 38' 56" EAST, 6.43 FEET; THENCE,

SOUTH 41 DEGREES 16' 26" EAST, 6.15 FEET; THENCE,

SOUTH 77 DEGREES 18' 42" EAST, 6.07 FEET, TO A POINT LYING IN THE CUL-DE-SAC RIGHTS-OF-WAY OF LORENZO COURT HAVING A RADIAL BEARING OF SOUTH 75 DEGREES 32' 40" WEST; THENCE,

NORTHWESTERLY ALONG LAST SAID CURVED CUL-DE-SAC RIGHTS OF WAY OF LORENZO COURT AN ARC DISTANCE OF 12.27 FEET; HAVING A RADIUS OF 44.00 FEET, THROUGH A CENTRAL ANGLE OF 15 DEGREES 58' 20" TO THE POINT OF BEGINNING.

Assessor's Parcel Number:  **2069-077-016**

24965 Lorenzo Court, City of Calabasas, California

# EXHIBIT "10"

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles , State of California, described as follows:

The Westerly one-half of Lot 126 of Tract No. 10630, in the City of Malibu, County of Los Angeles, State of California, as per Map recorded in Book 181, Pages 6 to 11 inclusive of Maps, in the Office of the County Recorder of said County.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, but with no right of surface entry, as provided in deeds of record.

Assessor's Parcel Number: **4470-001-006**

31636 Sea Level Drive, City of Malibu, California

# EXHIBIT "11"

# EXHIBIT "A"

All that certain real property situated in the County of Santa Clara, State of California, described as follows:

LOT 12, TRACT NO. 6790 HIDDEN GLEN NORTH VALLEY UNIT NO. 11, IN THE CITY OF SAN JOSE, COUNTY OF SANTA CLARA, STATE OF CALIRONIA, MAP FILED ON MARCH 12, 1980, MAP BOOK 460, PAGE(S) 20 AND 21, SANTA CLARA COUNTY RECORDS.

1905 Baker Place, City of San Jose, California

# EXHIBIT "12"

File No: 02215469

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

A Condominium Comprised of:

Parcel 1:

An undivided 1/72 interest in and to all that portion of Lot 6 of Tract No. 36686, in the City of Santa Clarita, County of Los Angeles, State of California, as per Map recorded in Book 1068, Pages 24 to 27 inclusive of Maps, in the Office of the County Recorder of said County, shown and defined as "Common Area" on the Condominium Plan recorded March 28, 1988 as Instrument Number 88-412343 of Official Records of said County.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, but with no right of surface entry, as provided in deeds of record.

Parcel 2:

All that portion of Lot 6 of said Tract No. 36686 as shown and defined as Unit No. 314 on said Condominium Plan.

Parcel 3:

Non-exclusive Easements for the benefit of and appurtenant to Parcels 1 and 2, above, for such Easements are set forth in the Sections entitled "Certain Easements for Owners" and "Support, Settlement and Encroachment" of the article entitled "Easements" of that certain "Declaration of Covenants, Conditions and Restrictions Establishing a Plan of Condominium Ownership", recorded March 28, 1988 as Instrument Number 88-412343 of Official Records of said County, and any amendments thereto hareafter recorded supplementary Declaration of Covenants, Conditions and Restrictions now or hereafter recorded pursuant thereto (collectively, the "Declaration").

Assessor's Parcel Number:  **2836-039-101**

26968 Flo Lane #314, Santa Clarita, California

# EXHIBIT "13"

File No: 02219686

# EXHIBIT "A"

All that certain real property situated in the County of Sacramento, State of California, described as follows:

(City of Folsom)

Lot 5, as shown on that certain Map entitled" "Plat of Prairie Oaks Unit No. 9", filed in the Office of the County Recorder of Sacramento County, California on July 10, 1997, in Book 246 of Maps, Page 13.

Assessor's Parcel Number: **072-1500-005-0000**

754 Agostini Circle, Folsom, California

# EXHIBIT "14"

File No: 02219741

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

LOT 11 OF TRACT NO. 21405, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 735 PAGE(S) 62 AND 63 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel Number: **2190-005-011**

4329 Bolivar Road, (Woodland Hills Area) City of Los Angeles. CA.

# EXHIBIT "15"

File No: 02219749

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

The South half of Lot 2 of Hollywood Park Place, in the City of Los Angeles, in the County of Los Angeles, State of California, as per Map recorded in Book 7, Page(s) 62 of Maps, in the office of the County Recorder of said County.

Assessor's Parcel Number: **5576-004-035**

2138 North Cahuenga Boulevard, Los Angeles, California

# EXHIBIT "16"

File No: 02219684

# EXHIBIT "A"

All that certain real property situated in the County of Contra Costa, State of California, described as follows:

(City of Antioch)

Lot 412, as shown on the Map of Subdivision 7822, filed April 9, 1998, in Book 399 of Maps, Page 14, Contra Costa County Records.

Excepting therefrom:

All oil, gas, casinghead gasolines and other hydrocarbons and mineral substances below a point 500 feet below the surface of said land together with the right to take, remove, mine, pass through and dispose of all oil, gas, casinghead gasoline and other hydrocarbons and mineral substances, but without any right whatsoever to enter upon the surface of said land, as reserved in the Deed from Mary M. Hines, et al, recorded October 5, 1977, Book 8536, Page 172, Official Records.

Assessor's Parcel Number: **055-410-007-3**

1873 Badger Pass Way, Antioch, California

# EXHIBIT "17"

# EXHIBIT "A"

All that certain real property situated in the County of San Joaquin, State of California, described as follows:

LOT 54 AS SHOWN UPON MAP ENTITLED TRACT NO. 2254 PEACH TREE II, IN THE CITY OF TRACY, COUNTY OF SAN JOAQUIN, STATE OF CALIFORNIA, FILED FOR RECORD JANUARY 20, 1989 IN BOOK OF MAPS AND PLATS, BOOK 29, PAGE 59, SAN JOAQUIN COUNTY RECORDS 234-100-66 1575 LOCUST DRIVE, TRACY, CA 95376

Assessor's Parcel Number: **234-100-66**

1575 Locust, City of Tracy, California

# EXHIBIT "18"

File No: 02219562

# EXHIBIT "A"

All that certain real property situated in the County of Stanislaus, State of California, described as follows:

Lot 89 of Salida Haciendas Unit No. 1, in the County of Stanislaus, State of California, as per Map thereof filed December 06, 1994 in Volume 36 of Maps, at Page 99 Stanislaus County Records.

5316 Sugar Creek Lane, Salida Area, California

# EXHIBIT "19"

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Parcel 1:

The Northeasterly 50 feet of Lot(s) 15 in Block 17 of the Palisades, in the City of Santa Monica, in the County of Los Angeles, State of California, as per map recorded in Book 23, Page(s) 142 of Maps, in the Office of the County Recorder of said County.

Parcel 2:

The Northwest 46 feet of the Southwest 50 feet of the Northeast 100 feet of Lot(s) 15 in Block 17 of the Palisades, in the City of Santa Monica, in the County of Los Angeles, State of California, as per map recorded in Book 23, Page(s) 142 of Maps, in the Office of the County Recorder of said County.

Parcel 3:

An easement upon and along the Southwesterly 50 feet of Lot(s) 15, in Block 17 of the Palisades, in the City of Santa Monica, in the County of Los Angeles, State of California, as per map recorded in Book 23, Page(s) 142 of Maps, in the Office of the County Recorder of said County, for the purpose of servicing and making repairs reasonably necessary in maintaining the water, sewer and gas mains and pipes which provide service to the Northeasterly 50 feet and the Northwesterly 46 feet of the Southwesterly 50 feet of the Northeasterly 100 feet of said Lot 15.

Assessor's Parcel Number: **4280-025-015**

734 12th Street, City of Santa Monica, California

# EXHIBIT "20"

·File No: 02219682

# EXHIBIT "A"

All that certain real property situated in the County of San Bernardino, State of California, described as follows:

THE EAST 165 FEET OF LOT 35, SECTION 33, TOWNSHIP 1 SOUTH, RANGE 8 WEST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO MAP OF SUBDIVISION OF A PART OF RANCHO SANTA ANA DEL CHINO, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 6, PAGE 15 OF MAPS, RECORDS OF SAN BERNARDINO COUNTY.

EXCEPTING THEREFROM THE SOUTH 516 FEET THEREOF.

ALSO EXCEPTING THEREFROM THE NORTH 33.00 FEET.

ALSO EXCEPTING THEREFROM THE EAST 25.00 FEET.

AREAS AND DISTANCES COMPUTED TO STREET CENTERS.

ALSO EXCEPTING THEREFROM A TRIANGULAR SHAPED PORTION OF THE ABOVE DESCRIBED PARCEL OF LAND BEGINNING AT THE NORTHEAST CORNER OF SAID PARCEL;

THENCE SOUTH 00° 00' 48" WEST, ALONG THE EAST LINE OF SAID PARCEL, A DISTANCE OF 23.00 FEET;

THENCE NORTH 44° 59' 12" WEST, A DISTANCE OF 32.53 FEET TO A POINT ON THE NORTH LINE OF SAID PARCEL, SAID POINT BEINGS 23.00 FEET NORTH 89° 59' 12" WEST FROM THE POINT OF BEGINNING;

THENCE SOUTH 89° 59' 12" EAST ALONG THE NORTH LINE OF SAID PARCEL, A DISTANCE OF 23.00 FEET, TO THE POINT OF BEGINNING.

Assessor's Parcel Number: **1013-281-09-0-000**

11708 Roswell Avenue, Chino Area, California

# EXHIBIT "21"

File No: 02219747

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 5 of Tract No. 23881 in the City of Torrance, County of Los Angeles, State of California, as per Map recorded in Book 627, Pages 29 and 30 of Maps, in the Office of the County Recorder of said County.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, but with no right of surface entry, as provided in deeds of record.

Assessor's Parcel Number: **7524-021-005**

20526 Amie Avenue, City of Torrance, California

# EXHIBIT "22"

File No: 02216446

# EXHIBIT "A"

All that certain real property situated in the County of Riverside, State of California, described as follows:

Lot 35 of Tract No. 23020, in the City of Norco, County of Riverside, State of California, as per Map recorded in Book 201, Pages 7 through 12, inclusive of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel Number:  **130-422-008-2**

3502 Morning Star Lane, Norco, California

# EXHIBIT "23"

File No: 02219685

# EXHIBIT "A"

All that certain real property situated in the County of Riverside, State of California, described as follows:

Lot 200 of Gavilan Park #3, County of Riverside, State of California, as shown by Map on file in Book 14, Page 21 and 22 of Maps, Records of Riverside County, California.

Assessor's Parcel Number: **287-331-022-8**

17130 Palomas Drive, Perris Area, California

# EXHIBIT "24"

File No:  02215472

# EXHIBIT "A"

All that certain real property situated in the County of Santa Barbara, State of California, described as follows:

Parcel One:

Parcel A of Parcel Map No. 11802, in the City of Solvang, County of Santa Barbara, State of California, as shown on Map filed in Book 12, page(s) 25 of Maps, in the Office of the County Recorder of said County.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, but with no right of surface entry, as provided in deeds of record.

Parcel Two:

An easement for water line purposes, ten feet in width the Westerly and Northerly boundaries line of said easement being described as follows:

Beginning at the Northeast corner of Parcel A as shown on Parcel Map No. 10979 filed in Book 5, page 41 of Parcel Maps, in the Office of the County Recorder of Santa Barbara County, California;

Thence North 7° 52' 34" East 9.35 feet to the Northwest corner of Parcel Bank of America National Trust and Savings Association as shown on said Map No. 10979;

Thence along the Northerly boundary line of said Parcel B, South 73° 23' East 390.32 feet to the Northerly corner thereof.

Assessor's Parcel Number: **137-140-27**

938 Fredensborg Canyon Road, City of Solvang, California

# EXHIBIT "25"

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 61 of Tract No. 24680, in the County of Los Angeles, State of California, as per Map recorded in Book 757, Pages 82 to 86 inclusive of Maps, in the Office of the County Recorder of said County.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, but with no right of surface entry, as provided in deeds of record.

Assessor's Parcel Number: **4434-048-009**

21431 Chagall Road, Topanga Area, California

100

# EXHIBIT "26"

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 14 of Tract No. 9658, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 135, Page 23 of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel Number: **2338-010-007**

11479 Tiara Street, City of Los Angeles, California

# EXHIBIT "27"

File No: 02210757

## EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 88 of Tract No. 5867, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 62, Page 3 of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel Number : 2353-023-011

4865 Bakman Avenue, (North Hollywood Area) City of Los Angeles CA.

# EXHIBIT "28"

File No: 02219742

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

A Condominium Comprised of:

Parcel 1:

Unit 5404 Consisting of separate interest in space in Module C, as shown and defined in the Condominium Plan for Modules A, B, C, D, E and F of Lot 8 of Tract No. 45223, in the County of Los Angeles, State of California, recorded February 11, 2000 as Instrument No. 00-215291, of Official Records.

Parcel 2:

An Undivided one-eighteenth (1/18) fee simple interest as a tenant in common in and to all of the real property comprising the common area of Module of Lot 8 of Tract No. 45223, as per map recorded in Book 1149, page 16 to 27 inclusive, of maps, in the office of the County Recorder of said County.

Except therefrom Units 5101, 5102, 5104, 5106, 5108, 5109, 5201, 5202, 5204, 5206, 5208, 5209, 5401, 5402, 5404, 5406, 5408 and 5409, as shown on the Condominium Plan referred to in Parcel 1.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, but with no right of surface entry, as provided in deeds of record.

Parcel 3:

Non-Exclusive easements for access, ingress, encroachment, support, maintance, drainage, use, enjoyment, repairs, and for other purposes, all as described in the Declaration and any amendments thereto.

Assessor's Parcel Number: **2844-033-192**

18032 Flynn Drive #5404, Canyon Country Area, California

# EXHIBIT "29"

File No: 02219739

## EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

LOT 142 OF TRACT NO. 7910, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 109 PAGE 3 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel Number: **2245-027-038**

14151 Burbank Boulevard, City of Los Angeles, California

# EXHIBIT "30"

## EXHIBIT A

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

A parcel of Land in the City of Malibu, County of Los Angeles, State of California, being a portion of the Rancho Topanga Malibu Sequit, as confirmed to Matthew Keller, by patent recorded in book 1 page 407 et seq., of Patents, in the Office of the County Recorder of said County, described as follows:

Beginning at a point in the Northerly line of the 20 foot strip of land described in the Deed from the Marblehead Land Company to the State of California, recorded in Book 16845 Page 253 of Official Records of said County, said point of beginning being distant Westerly 173.00 feet along said Northerly line from a point distant North 24° 50' 30" West 60 feet from Engineer's Center Line Station 947 Plus 68.93 at the Westerly extremity of that certain course described as North 65° 9' 30" East 735.70 feet, in the centerline of the 80 foot strip of land described in the Deed from T. Cadwalader, Trustee et al., to the State of California, recorded in Book 15228, Page 342 of Official Records of said County, thence from said point of beginning North 32° 26' 5" West 150 feet to a point, thence South 57° 33' 55" West 199.92 feet to a point, thence 32° 26' 5" East 150 feet to a point in the Northerly line of said 20 foot strip of land; thence Easterly along the Northerly lines of said 20 foot strip of land following the arc of a circular curve concave Southerly, having a radius of 2060 feet, a distance of 200 feet, more or less, to said point of beginning.

Excepting therefrom all oil, gas, minerals and other hydrocarbon substances lying below the surface of said land but with no right of surface entry as provided in deeds of record.

Assessor's Parcel Number: 4452-019-004

## EXHIBIT "A"

A parcel of land in the City of Malibu, County of Los Angeles, State of California, being a portion of The Rancho Topanga Malibu Sequit, as confirmed to Matthew Keller by Patent recorded in Book 1 Page(s) 407, et seq., of Patents, in the office of the County Recorder of said County, particularly described as follows:

Beginning at a point in the Northerly line of the 20 foot parcel described in the deed from Marblehead Land Company to the State of California, recorded in Book 16648 Page 253, Official Records of said County, said point of beginning being North 24° 50' 30" West 60 feet from Engineer's center line station 947 plus 68.93 at the Westerly extremity of that certain center line course described as "North 65° 09' 30" East 735.70 feet" in the deed of the 50 foot strip of land from T. R. Cadwalader, et al, to the State of California, recorded in Book 15228 Page 342, Official Records of said County; thence Westerly 173.00 feet along the Northerly line of said 20 foot strip on the arc of a curve normal to the course of North 24° 50' 30" West and concave Southeasterly with a radius of 2060 feet to the Southeasterly corner of the parcel of land described in a deed from Marblehead Land Company to Sebastian S. V. Arrieta recorded in Book 17257 Page 281, Official Records of said County; thence North 32° 29' 05" West 240 feet along the Easterly line of said last mentioned parcel and its prolongation Northerly; thence North 62° 35" East 231.69 feet; thence South 24° 50' 30" East 240 feet, more or less, to a point in the Northerly line of the 20 foot strip hereinbefore mentioned; thence South 65° 09' 30" West 27 feet to the point of beginning.

Excepting therefrom all minerals, oil, petroleum, asphaltum, gas, coal and other hydrocarbon substances in, on, within and under said lands and every part thereof, but without surface right of entry, as reserved by Marblehead Land Company in deed recorded August 15, 1944 in Book 21117 Page 357, Official Records.

Assessor's Parcel No: 4452-019-005

# EXHIBIT "31"

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State
of California, described as follows:

Lot 2, 4 and 6 in Block 80 of the Townsite of Long Beach, in the City of
Long Beach,  County of Los Angeles, State of California, as per map
recorded in Book 19, Page(s) 91 of Miscellaneous Records, in the Office of
the County Recorder of said County.

Except therefrom all oil, gas, minerals, and other hydrocarbon substances
lying below the surface of said land, but with no right of surface entry as
provided in deeds of record.

Assessor's Parcel Number:  **7280-017-001**

350 Pine Avenue, Long Beach, California

# EXHIBIT "32"

## EXHIBIT A

## LEGAL DESCRIPTION

LOT 19 OF TRACT NO. 53306 IN THE CITY OF LONG BEACH, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER THE MAP RECORDED IN BOOK 1261, PAGES 31 THROUGH 34, INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, GAS, HYDROCARBON SUBSTANCES AND MINERALS OF EVERY KIND AND CHARACTER LYING MORE THAN 500 FEET BELOW THE SURFACE OF SAID LAND, TOGETHER WITH THE RIGHT TO DRILL INTO, THROUGH AND TO USE AND OCCUPY ALL PARTS OF SAID LAND LYING MORE THAN 500 FEET BELOW THE SURFACE THEREOF FOR ANY AND ALL PURPOSES INCIDENTAL TO THE EXPLORATION FOR AND PRODUCTION OF OIL, GAS, HYDROCARBON SUBSTANCES OR MINERALS FROM SAID LAND OR OTHER LANDS, BUT WITHOUT HOWEVER, THE RIGHT TO USE EITHER THE SURFACE OF SAID LAND OR ANY PORTION OF SAID LAND WITHIN 500 FEET OF THE SURFACE FOR ANY PURPOSE OR PURPOSES WHATSOEVER AS RESERVED IN VARIOUS DEEDS OF RECORD.

# EXHIBIT "33"

# EXHIBIT "A"

EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

That portion of the Northeast Quarter of the Southwest Quarter of Section 22, Township 1 North, Range 17 West, San Bernardino Meridian, in the City of Calabasas, County of Los Angeles, State of California, according to the Official Plat of said land filed in the District land office September 25, 1896, described as follows:

Beginning at the Southeast corner of the Northeast Quarter of the Southwest Quarter of Section 22;
Thence 89° 51' 30" West 620.42 feet to the true point of beginning;
Thence from said true point of beginning North 4° 10' 30" West 428.59 feet to a point in the center line of Ventura Boulevard;
Thence along the center line of Ventura Boulevard, North 70° 40' 30" East 180.57 feet;
Thence South 0° 08' 30" West 487.55 feet to a point in the South line of said Northeast Quarter of the Southwest Quarter of Section 22;
Thence North 89° 51' 30" West 138.27 feet to the true point of beginning.

Except therefrom the Northerly 30 feet, measured at right angles to the center line of Ventura Boulevard.

Assessor's Parcel Number: **2069-032-027**

24100 Calabasas Road, Calabasas, California

# EXHIBIT "34"

File No: 02215796

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

That portion of the Southerly 396.00 feet of the North-Half of the Southeast Quarter of Section 26, Township 1 North, Range 17 West, San Bernardino Meridian, in the City of Calabasas, County of Los Angeles, State of California, according to the Official Plat of said land filed in the district land office on September 20, 1896, described as follows:

Beginning at the intersection of the Northerly line of said Southerly 396.00 feet with the Easterly line of Old Topanga Canyon Road, 50 feet wide, as said road is described in the deed to the County of Los Angeles, recorded on May 26, 1930 as Instrument No. 1195, in Book 9931 Page 366, of Official Records of said County; thence along Easterly line South 1° 07' 20" East 249.75 feet to the Northerly line of Mulholland Highway. Said highway being designated as Parcel 9-11 in Final Decree of Condemnation entered in Superior Court of Los Angeles County Case No. 65852, a certified copy thereof being recorded on May 29, 1957 as Instrument No. 4781 in Book 54644 Page 256 of Official Records of said County; thence continuing South 1° 07' 20" East 48.05 feet to the beginning of a tangent curve concave Easterly having a radius of 125.00 feet; thence Southerly along said curve, an arc distance of 14.42 feet; thence South 84° 01' 20" East 31.40 feet; thence North 29° 25' 30" East 75.20 feet to the beginning of a tangent curve concave Southeasterly having a radius of 640.00 feet; thence Northeasterly, along said last mentioned curve, an arc distance of 361.67 feet to said first above mentioned Northerly line; thence along said first above mentioned Northerly line, North 89° 57' 25" West 330.16 feet to the point of beginning.

Except therefrom that portion described as follows:

Parcel A:

The Westerly 15 feet of that certain parcel of land in the Southerly 396 feet of the North half of the Southeast Quarter of Section 26, Township 1 North, Range 17 West, San Bernardino Base and Meridian, described in deed to George Williams et ux., recorded as Document No. 988, on October 10, 1962 in Book D1784 Page 245 of Official Records, in the office of the County Recorder of said County.

Parcel B:

3840 Old Topanga Canyon Road, Calabasas, California

File No: 02215796

The Southeasterly 10 feet of above-mentioned certain parcel of land in the Southeast Quarter of above-mentioned Section 26.

Assessor's Parcel Number: **2079-021-006**

3840 Old Topanga Canyon Road, Calabasas, California

# EXHIBIT "35"

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 18 of Tract No. 32936, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 889, Pages 14 to 16 inclusive of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel Number : 2723-015-065

10549 Nevada Avenue, (Chatsworth area) City of Los Angeles, CA

# EXHIBIT "36"

File No: 02219745

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 35 of Tract No. 11057, in the City of Glendale, County of Los Angeles, State of California, as per Map recorded in Book 196, Pages 22 through 26 inclusive of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel Number: **5650-014-016**

1610 Arboles Drive, City of Glendale, California

# EXHIBIT "37"

# EXHIBIT "A"

All that certain real property situated in the County of San Bernardino, State of California, described as follows:

Portion of Lot Nine (9), Block 7, of the City of Ontario, County of San Bernardino, State of California, as per Map recorded in Book 9, Page 43 of Maps, in the Office of the County Recorder of said County, described as follows:

Beginning at a point 59 feet East of the Southwest corner of the East three-fourths of Lot eight (8) in said Block 17;

Thence North 101.6 feet;

Thence West 20 feet;

Thence North to the North line of said Lot 9;

Thence East to the Northeast corner of said Lot 9;

Thence South to the Southeast corner of said Lot 9;

Thence West to the point of beginning.

Assessor's Parcel Number: **1048-374-14-0-000**

415 East D Street, City of Ontario, California

# EXHIBIT "38"

File No: 02219560

# EXHIBIT "A"

All that certain real property situated in the County of Solano, State of California, described as follows:

Lot 5, Final Map Valle Ensenada Unit 2A, in the City of Vallejo, County of Solano, State of California , which Map was filed in the Office of the Recorder of Solano County, California,  On July 10, 1987, in Book 49, Page(s) 54.

Assessor's Parcel Number:  **0079-431-180-01**

117 Drake Court, City of Vallejo, California

# EXHIBIT "39"

File No: 02211688

# EXHIBIT "A"

All that certain real property situated in the County of San Bernardino, State of California, described as follows:

Lot 37 of Deodar Place, in the City of San Bernardino, County of San Bernardino, State of California, as per map recorded in Book 21, Page 28 of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel Number : 0146-012-24-0-000

2106 North Mountain View Avenue, San Bernardino, California

# EXHIBIT "40"

1   Steven T. Gubner - Bar No. 156593
    Richard D. Burstein – Bar No. 56661
2   Corey R. Weber - Bar No. 205912
    EZRA BRUTZKUS GUBNER LLP
3   21650 Oxnard Street, Suite 500
    Woodland Hills, CA 91367
4   Telephone: 818.827.9000
    Facsimile: 818.827.9099
5

6   Attorneys for David Seror, Chapter 7 Trustee

7

8               **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION**

10  In re                                          Case No. 1:08-bk-14339-MT

11  AUTOMATED FINANCE CORPORATION                  Chapter 7
    fka AUTOMATED FINANCIAL, LLC, dba
12  Out of BK.com; dba 520debt.com; dba            Adv. No. 1:08-ap-01500-MT
    Calabasas Financial Center Mortgages; dba
13  FHA1FHA.com,                                   **[PROPOSED] ORDER RE CHAPTER 7
                                                   TRUSTEE'S MOTION FOR AN ORDER
14              Debtor.                            ENTERING DEFAULT JUDGMENT
                                                   AGAINST, AND SUBSTANTIVELY
15  _____        CONSOLIDATING, FIRST CITY
                                                   FUNDING, FINANCE NETWORK, LLC,
16                                                 WAVE SOUND, INC., OTC, LLC,
    DAVID SEROR, CHAPTER 7 TRUSTEE,                COLLATERALIZED WAREHOUSING
17                                                 FUND, LLC FKA CSAP SECURED
                Plaintiff,                         INVESTORS, LLC, NETWORK
18                                                 DEVELOPMENT, LLC AND INN MALIBU
    vs.                                            CORPORATION DBA MALIBU INN
19                                                 CORPORATION WITH THE ESTATE OF
    AUTOMATED FINANCE CORPORATION,                 DEBTOR AUTOMATED FINANCE
20  *etc., et al.*,                                CORPORATION *NUNC PRO TUNC* AS OF
                                                   THE DATE OF THE INVOLUNTARY
21              Defendants.                        BANKRUPTCY PETITION FILED ON
                                                   JUNE 26, 2008
22
                                                   Hearing on Motion:
23                                                 Date:
                                                   Time:
24                                                 Place: Courtroom 302
                                                         U.S. Bankruptcy Court
25                                                       21041 Burbank Blvd.
                                                         Woodland Hills, CA 91367
26

27

28

                                    1

1         The Chapter 7 Trustee's (the "Trustee") Motion for an Order entering default judgment

2   against, and substantively consolidating, the following persons and entities with the estate of

3   Debtor Automated Finance Corporation (the "Debtor") *nunc pro tunc* as of the date of the

4   involuntary bankruptcy petition filed on June 26, 2008 and effective on the date of entry hereof:

5   (1) First City Funding; (2) Finance Network, LLC; (3) Wave Sound, Inc.; (4); OTC, LLC; (5)

6   Collateralized Warehousing Fund, LLC fka CSAP Secured Investors; (6) Network Development,

7   LLC; and (7) Inn Malibu Corporation dba Malibu Inn Corporation (the "Motion"), duly came on

8   for hearing on _____ at _____, the Honorable Maureen A. Tighe presiding.  Richard D.

9   Burstein of Ezra Brutzkus Gubner LLP appeared on behalf of the Chapter 7 Trustee, George E.

10  Schulman of Danning, Gill, Diamond & Kollitz, LLP, appeared on behalf of Nurit Petri.  Other

11  appearances are as reflected in the Court's record.  The Court, having considered the Motion and

12  the papers before it, the arguments of counsel, and good cause appearing,

13        It Is Hereby Ordered That:

14      1.    The Motion is granted.

15      2.    Default judgment is hereby entered against the following entities:

16        a.  First City Funding

17        b.  Finance Network, LLC

18        c.  Wave Sound, Inc.

19        d.  OTC, LLC

20        e.  Collateralized Warehousing Fund, LLC fka CSAP Secured Investors;

21        f.  Network Development, LLC; and

22        g.  Inn Malibu Corporation dba Malibu Inn Corporation.

23      3.    First City Funding, Finance Network, LLC, Wave Sound, Inc., OTC, LLC,

24  Collateralized Warehousing Fund, LLC fka CSAP Secured Investors, Network

25  Development, LLC and Inn Malibu Corporation dba Malibu Inn Corporation are hereby

26  substantively consolidated with the Debtor's Estate *nunc pro tunc* as of the date of the

27  involuntary bankruptcy petition filed on June 26, 2008.The order for relief as to the

28  debtors referred to herein shall be eleven days after the date of entry hereof.

2

1        4.    Any and all secured claims or interests that exist with respect to property of First

2    City Funding, Finance Network, LLC, Wave Sound, Inc., OTC, LLC, Collateralized

3    Warehousing Fund, LLC fka CSAP Secured Investors, Network Development, LLC and

4    Inn Malibu Corporation dba Malibu Inn Corporation shall remain attached to the specific

5    property to which the secured claims and interests attached, without dilution through the

6    consolidation of other secured claims and interests.  The Trustee shall have the right to

7    object to such purported secured claims and interests.

8

9

10   Dated: _____    _____
                                     MAUREEN A. TIGHE

11                                   UNITED STATES BANKRUPTCY JUDGE

12   Presented by:

13   EZRA BRUTZKUS GUBNER LLP

14
     By: /s/ Richard D. Burstein_____  _____
15        Richard D. Burstein
     Attorneys for David Seror, Chapter 7 Trustee
16

17   Approved as to form:

18   DANNING, GILL, DIAMOND & KOLLITZ, LLP

19
     By:  /s/ George E. Schulman_____
20        George E. Schulman
     Attorneys for Defendant Nurit Petri, Individually
21

22

23

24

25

26

27

28

3

1

2

3

| In re: AUTOMATED FINANCE CORPORATION fka AUTOMATED FINANCIAL, LLC, dba Out of BK.com; dba 520debt.com; dba Calabasas Financial Center Mortgages; dba FHA1FHA.com, | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER 1:08-bk-14339-MT |

4

# PROOF OF SERVICE OF DOCUMENT

5

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367**

6

7

The foregoing document described **NOTICE OF MOTION AND MOTION OF CHAPTER 7 TRUSTEE FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE AND NURIT PETRI; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID SEROR IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

8

9

10

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 31, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

11

12

13

☒ Service information continued on attached page

14

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):

15

On August 3, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

16

17

18

☒ Service information continued on attached page

19

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

20

21

22

23

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

24

25

| August 3, 2009 | Jennifer Long | |
|---|---|---|
| Date | Type Name | Signature |

26

27

28

135

| In re: AUTOMATED FINANCE CORPORATION fka AUTOMATED FINANCIAL, LLC, dba Out of BK.com; dba 520debt.com; dba Calabasas Financial Center Mortgages; dba FHA1FHA.com, Debtor(s). | CHAPTER 7<br><br>CASE NUMBER 1:08-bk-14339-MT |
|---|---|

## I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Bernard D Bollinger    bbollinger@buchalter.com, IFS_filing@buchalter.com;smartin@buchalter.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Donna L La Porte    vcorbin@wrightlegal.net, gtran@wrightlegal.net
- Elmer D Martin    elmermartin@msn.com
- Aron M Oliner    roliner@duanemorris.com
- George E Schulman    GSchulman@DGDK.Com
- David Seror    kpscion@ecjlaw.com, dseror@ecf.epiqsystems.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

## II. **SERVED BY U.S. MAIL**

| Presiding Judge<br>Honorable Maureen M. Tighe<br>U.S. Bankruptcy Court<br>21041 Burbank Boulevard, Suite 325<br>Woodland Hills, CA 91367 | |
|---|---|
| Request for Special Notice<br>Attys for Claimant/Secured Cred. East West Bank<br>Curtis C. Jung, Esq., Clifford P. Jung, Esq.<br>Monica H. Lin, Esq.<br>Jung & Yuen, LLP<br>888 South Figueroa Street, Suite 720<br>Los Angeles, CA 90017 | Request for Special Notice<br>Attorneys for Creditors<br>Jean-Jacques Dalpe, Genevieve L. Dalpe<br>Paula E. Meyer, Esq.<br>Paula E. Meyer & Associates APC<br>730 E. Chapman Avenue<br>Orange, CA 92866 |
| Request for Special Notice<br>Attorneys for American Nat'l Insurance Company<br>Alfred M. Clark, Esq.<br>Brandon J. Witkow, Esq.<br>Amber L. Harley, Esq.<br>Locke Lord Bissell & Liddell LLP<br>300 South Grand Avenue, Suite 800<br>Los Angeles, CA 90071 | Request for Special Notice<br>Attorneys for Clear Channel Broadcasting, Inc. and Emmis Radio LLC<br>Allan Herzlich, Esq.<br>Marta Peczat, Esq.<br>Herzlich & Blum, LLP<br>15760 Ventura Blvd., Suite 2024<br>Encino, CA 91436-3095 |

132182